799 So.2d 1241 (2001)
STATE of Louisiana
v.
Marquette Paul KING.
No. 01-0506.
Court of Appeal of Louisiana, Third Circuit.
November 7, 2001.
*1242 Earl B. Taylor, District Attorney, Alisa Aardoin Gothreaux, Asst. D.A., Opelousas, LA, Counsel for Plaintiff/Appellee State of Louisiana.
Paula Corley Marx, Louisiana Appellate Project, Lafayette, LA, Counsel for Defendant/Appellant Marquette Paul King.
Court composed of NED E. DOUCET, Jr., Chief Judge, and HENRY L. YELVERTON and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The defendant, Marquette Paul King, was convicted by a jury of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. He was subsequently sentenced to serve ten years at hard labor without benefit of probation, parole, or suspension of sentence, and to pay a fine of $1,000, which was subsequently suspended. Defendant now seeks review of his conviction claiming that he did not voluntarily absent himself from trial, he was justified in possessing a firearm under the circumstances of this case, and the trial court erred in limiting his testimony and refusing to admit certain exhibits based on irrelevancy.

ABSENCE FROM TRIAL
By this assignment of error, Defendant argues that the trial court erred in proceeding with trial in his absence. He maintains that his absence was not voluntary because he suffers from schizophrenia and severe depression and was hospitalized for suicidal ideation and depressed mood the day his trial resumed. Specifically, Defendant argues that he "did not just walk out of the trial or fail to show up on the second day of case." On the contrary, he maintains that his health deteriorated during the recess from January 3, 2001 to January 22, 2001.
La.Code Crim.P. art. 831(A) provides for a defendant's presence in court when he is prosecuted for a felony:
Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
(1) At arraignment;
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;
(3) At the calling, examination, challenging, impaneling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced; and
(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.
The continued presence of a defendant during a trial is addressed in La.Code Crim.P. art. 832, which reads in part:
A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to *1243 be present if his counsel is present or if the right to counsel has been waived and:
(1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial[.]
In the instant case, Defendant was present for jury selection on January 3, 2001. Following the selection of the jury, the trial court advised the jurors to return for trial on January 22, 2001, at 9:00 a.m. However, Defendant did not appear for trial that day. Defense Counsel subsequently moved for a mistrial stating that on the Friday before trial he was notified that Defendant was depressed and was committed to a mental unit where he remained until that time. When the State argued that the trial court had no legal ground to grant a mistrial, Defense Counsel responded by arguing that Defendant did not voluntarily absent himself from trial and that justice required a mistrial. However, Defense Counsel could produce no medical evidence to support his motion. Therefore, the trial court concluded that there were no grounds presented to grant the motion for a mistrial. The trial proceeded after the denial of the motion.
After the State rested its case, Defense Counsel presented the trial court with a copy of a memo he received at 11:01 a.m., via facsimile from Dr. Sarwat Gad, M.D. at the Behavioral Medicine Unit of Acadia St. Landry Hospital. The memo stated that Defendant was currently in treatment at the facility and was admitted January 17, 2001, "by reason of suicidal ideation and depressed mood." Dr. Gad noted in the memo that Defendant was diagnosed with severe, major depression and was currently not competent to stand trial. The State objected to the doctor's conclusion of incompetency and argued that Article 775 of the Louisiana Code of Criminal Procedure requires the trial court to determine whether a defendant has the mental capacity to proceed. The State complained that the letter did not give the trial court sufficient basis to find that Defendant did not have the mental capacity to proceed, but was "just a fax" stating a conclusion instead of facts upon which the trial court could draw a conclusion.
Thereafter, the trial court issued a subpoena ordering Dr. Gad's presence at 1:00 p.m. that afternoon and stated that it would make a ruling after discussing the matter with Dr. Gad. When court reconvened at 1:00 p.m., the trial court stated that it had spoken personally with Dr. Gad, who said that he was not aware of the content of the letter sent to the trial court and that he retracted the statement pertaining to Defendant's competency. Dr. Gad sent a second letter to the court via facsimile, which stated, "I would like to retract the statement of Mr. King being not competent. He is competent, however, unavailable due to hospitalization." The trial court also stated that Dr. Gad was served with a subpoena and was told that he had to appear or that Defendant had to be present at 1:00 p.m. In fact, Defendant was present at 1:00 p.m. and the trial court concluded there was no longer a statement of incompetence upon which to make a "775 ruling."
Defendant maintains that he was not voluntarily absent, stating that he has required medication for schizophrenia for six years and received Social Security Income (SSI) for his disability. He states further that he was admitted to the hospital on January 17, 2001, with the diagnosis of severe major depression and was still hospitalized on January 22, 2001. He argues that "[t]he issues of whether or not the trial should be recessed, continued, or a mistrial granted and the question of sanity or the capacity to proceed are distinct." *1244 Accordingly, he contends that the Motion for Mistrial, Continuance, or Recess should have been considered on the basis of his health as would have been done if he had been hospitalized for any physical illness.
La.Code Crim.P. art. 832 was applied by this court in State v. Tate, 95-1152 (La. App. 3 Cir. 3/6/96), 670 So.2d 671, where the defendant was present when his jury was impaneled and the trial court told the jury in the defendant's presence to report back approximately two weeks later for trial. During a recess on that day, defense counsel met with the defendant to talk about the case and told the defendant to be at his office on the day before trial. However, the defendant did not show up as instructed. On the day of trial, defense counsel was present, but the defendant was not. The defendant's family did not know his whereabouts so defense counsel orally moved for a mistrial explaining that the defendant was apprized of the fact he had to be in court and that something may have been wrong for him not be there. The trial court determined that the defendant voluntarily absented himself from trial and, having no reason to grant a mistrial, denied the motion. The trial court ordered the trial to proceed. On appeal, we concluded:
A defendant who freely and voluntarily absents himself from his trial waives his right to be present. La.Code Crim.P. art. 832(A); State v. Humphrey, 576 So.2d 1104 (La.App. 3 Cir.1991). The trial judge, who understood the situation better than we do, was in the best position to determine whether the absence was voluntary. Defendant's absence from the hearing was voluntary, and it was not error to conduct the trial without him.
Id. at 672.
In the instant case, the trial court initially denied Defendant's motion when his counsel failed to set forth any grounds supporting the granting of a mistrial. Defendant presented no evidence or documentation in support of his motion even though he was hospitalized the Friday before the trial began on Monday. We find that there was no error in the trial court's ruling at this point in the trial.
The motion was re-urged at the close of the State's case and, in support of same, the letter from Dr. Gad was submitted to the trial court. However, when the trial court attempted to determine the voluntariness of Defendant's absence pursuant to Dr. Gad's letter, the statement regarding the lack of Defendant's competence was retracted by Dr. Gad and Defendant was present for the remainder of trial. Thus, the trial court no longer had any potential ground to grant a mistrial and Defendant's argument that a mistrial was mandated once his hospitalization and guarded condition were known is without merit. Further, Defendant's argument that the assertions by Defense Counsel at the beginning of the trial required further inquiry before proceeding in his absence is unfounded in this instance. We again note that the trial court promptly contacted Dr. Gad when it was first presented with the doctor's fax, which was the only information other than the argument of Defense Counsel concerning Defendant's mental health and the possible impact of same on the voluntariness of his absence at trial.
Defendant also argues that the motion should have been considered on the basis of his health as would have been done if he had been hospitalized for any physical illness. However, Defendant did not present any evidence at the time of his motion indicating that his admission was involuntary, thus, prohibiting him from attending his trial. Moreover, his treating physician released him for trial. Lastly, Defendant's argument that he was not voluntarily absent because he has required medication *1245 for schizophrenia for six years and received SSI for his disability fails to support the claim that his absence was involuntary. Accordingly, we find that there was no error in the trial court's continued denial of Defendant's motion for a mistrial and, thus, this assignment of error is without merit.

JUSTIFICATION
By this assignment of error, Defendant argues that the jury erred in finding him guilty because justification is a defense to the charge of possession of a firearm by a felon. Specifically, he maintains that La. R.S. 14:95.1 does not deny an offender the specific defense of justification contained in La.R.S. 14:18.
Pursuant to La.R.S. 14:18(6), the defense of justification can be claimed "[w]hen any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed." In State v. Blache, 480 So.2d 304, 308 (La.1985), the supreme court concluded that a felon may justifiably possess a weapon for self-defense in situations as follows:
We hold that when a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. In such situation justification is a defense to the charge of felon in possession of a firearm.
This is not to say that a convicted felon is entitled to own or maintain possession of a weapon, constructive possession or otherwise, for protection, or for any other reason.
In Blache, the issue of whether or not the actions of the defendant were justified was not discussed, only that it was possible for a felon to justify the possession of a weapon. The supreme court noted, however, that "[t]here was no evidence of constructive possession of the shotgun by defendant preceding the encounter." Id. The supreme court in State v. Cheatwood, 458 So.2d 907, 910 (La.1984), stated, "Since `justification' defenses are not based on the nonexistence of any essential element of the offense, but rather on the circumstances which make the accused's conduct excusable on policy grounds, such defenses should be treated as affirmative defenses which the accused must establish by a preponderance of evidence." See also State v. Miller, 98-1873 (La.App. 3 Cir. 10/13/99), 746 So.2d 118, writ denied, 99-3259 (La.5/5/00), 761 So.2d 541.
The trial court allowed Defendant to present the defense of justification in the case at hand and instructed the jury on that defense. Thus, the issue is whether the jury could have concluded that Defendant was not reasonably justified, given the surrounding circumstances when he armed himself with a shotgun. At trial, Defendant agreed to the stipulation that he was a convicted felon. Next, Officer Ronald Richard Olman of the Opelousas Police Department testified that he went to a trailer located at 521 Sapphire Street, Lot 3, and spoke with Carlton Rideau, Yolanda Rideau, and Marquette King. Officer Olman said that Carlton reported to him that he had come to pick up his sister, Yolanda, who he claimed had been beaten by Defendant. Meanwhile, Yolanda told police that Defendant had not beaten her. The police also noted that she had no physical marks which would be consistent with a beating. Officer Olman testified that when he explained this to Carlton, he became upset and said, "If y'all can't do *1246 the job, I'm gonna do it for y'all" and then sped off into the trailer park.
From the roadway, Officer Olman and Defendant walked back toward the trailer where Carlton confronted Defendant. Carlton was standing behind the door of his car and shouting at the Defendant, who was standing in the doorway of his trailer. Officer Olman testified that Carlton was upset and was making inflammatory gestures and remarks, but described the words used by Carlton as "just arguing." Although Officer Olman could not recall the exact words used, he admitted that they were loud and abusive. Further, according to Officer Olman, the two men never advanced toward each other.
Officer Letitia Trahan, who was assisting Officer Olman, testified that she heard Carlton yell from his car window while in the trailer park. She also heard him say that if the officers did not take care of Defendant, he would. It was her opinion as a police officer that the words used by Carlton were threatening to Defendant. Also, Officer Trahan testified that Defendant went to the back of the trailer after Carlton made the threat. According to her, Defendant would have been protected by police had Carlton made any advances toward him. She explained that she and Officer Olman were located between Defendant and Carlton.
Officer Olman also testified that he made Carlton leave the area and then he proceeded to the doorway of Defendant's trailer along with Officer Trahan to advise Defendant that if Carlton returned, he was to call the police and charges would be filed against him. Officer Olman observed Defendant go back into the trailer, leaving the door open. As Officer Olman entered the doorway and announced the presence of the police, Defendant came around the corner, put a shell inside a shotgun, closed it, pulled back the hammer, and pointed it at Officer Olman. Officer Trahan, who was behind Officer Olman, also saw the weapon in Defendant's hands and testified that Defendant pointed it at Officer Olman. Officer Olman immediately drew his weapon and asked Defendant to drop his weapon. According to Officers' Olman and Trahan, Defendant promptly complied.
Defendant testified in his own behalf and said that the trailer belonged to Yolanda and that he did not live at the residence. He explained that he was at her trailer when a verbal altercation occurred between Carlton and him, wherein Carlton threatened him with bodily harm. Defendant stated that he was scared and terrified and felt the need to protect himself with the gun. He testified that the gun did not belong to him and that it was located in the bedroom of the trailer, on top of the bed with a single shell lying next to it. Additionally, Defendant testified that two armed police officers were on the scene the entire time Carlton was confronting him and that he could not tell whether Carlton had a weapon. Defendant denied putting a shell into the gun and cocking it. He claimed that he had the shell in one hand and the gun in the other. He testified that he immediately complied with the policeman's order to put the gun down. We note that Officer Olman admitted on cross-examination that his offense report did not state that Defendant pointed the gun at him. We also note that Defendant admitted that he was aware that he was not supposed to have a gun because he is a convicted felon.
Although it was clear that Carlton was angry and had verbally threatened Defendant, the record supports the jury's conclusion that Defendant's actions were not justified. There is no indication that Carlton was armed or that he remained in the area. Further, the two men were separated from each other by two armed police officers. Defendant was not in imminent *1247 peril of death or great bodily harm, therefore, it was not necessary or apparently necessary that he take possession of a weapon in self defense. Accordingly, this assignment of error is without merit.

RELEVANCY
By this assignment or error, Defendant argues that the trial court erred in finding the testimony regarding his mental condition and his two proffers of evidence irrelevant and inadmissible. Specifically, he contends that the proffered exhibits were relevant in that the documents indicated the extent of medication prescribed, the nature of his condition, and verification by hospital records of the reason for his absence. Defendant also maintains that the evidence was relevant to the jury's determination of reasonableness on the justification issue. Lastly, he argues that, not only were they relevant, they were also admissible under the exceptions to the hearsay rule provided by La.Code Evid. art. 803.

Relevance of Proffered Testimony
During direct examination, Defendant was asked questions pertaining to his schizophrenia and the medications he has taken for this disability. The State objected to the relevancy of the testimony pertaining to Defendant's medication for schizophrenia without a plea of insanity, claiming that the testimony was offered as proof of diminished capacity. The trial court subsequently held that the only two possible purposes for the testimony was to prove diminished capacity or to show the crime excusable because of insanity. The trial court noted that Louisiana law does not recognize diminished capacity and that Defendant had not pled insanity. Thus, it concluded that Defendant's only purpose in showing he was on medication for schizophrenia would be to establish some form of diminished capacity. Since that defense is not recognizable, the trial court ruled that the questions regarding Defendant's medication were inadmissible. We agree.
As stated in La.Code Crim.P. art. 651, "When a defendant is tried upon a plea of `not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible." Further, as noted by this court in State v. Bell, 543 So.2d 1013, 1019 (La.App. 3 Cir.1989):
Louisiana does not recognize the doctrine of diminished capacity. Therefore, a mental defect or disorder short of legal insanity cannot serve to negate specific intent and thus reduce the degree of a crime. Evidence of a defendant's mental capacity at a trial where insanity is raised as a defense is presented for use in determining whether the defendant was legally insane at the time the offense was committed. It is not relevant to determining the issue of specific intent. State v. Jones, 359 So.2d 95 (La.1978), cert. denied, 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708 (1978); State v. Pravata, 522 So.2d 606 (La.App. 1st Cir.1988), writ denied, 531 So.2d 261 (La.1988).
See also State v. Smith, 95-1171 (La.App. 3 Cir. 4/24/96) 677 So.2d 458. Thus, because there was no basis for admitting the testimony, we find that the trial court correctly ruled that the testimony was irrelevant. Accordingly, this assignment of error is without merit.

Relevancy and Admissibility of Proffered Exhibits
Next, Defendant attempted to introduce his prescriptions and a report into evidence as proffers one and two. The State objected stating that the documents were hearsay. The trial court ruled as follows:
The court notes that the documents, in and of themselves, even though it's a proffer, the documents, in and of themselves, are in fact hearsay. You have *1248 his testimony that he's taking medication and he may testify as to that, but as far as the documents themselves, even though we're in a proffer, the court rules the documents themselves inadmissible even though it's part of a proffer, which is questionable as to whether that is recognizable in a criminal proceeding. But the court allows you to make the proffer and allows you to make the offering so that those parties that would review would have an opportunity to review this in its entirety and make the appropriate decisions. Okay; that'll take care of the proffer.
. . . .
I am allowing you, first, to make the proffer; secondly, in the proffer, within the proffer, you are making an offering for inadmissible evidence, and that is documents which the court considers to be hearsay, which are, in fact, hearsay. However, if the Court of Appeals recognizes the proffer, the court makes the ruling that in the profferand if that evidence is necessary to be considered, the court finds that the offer within the proffer, that is, those documents, that hearsay information, the court finds that to be inadmissible because it is hearsay, it's not subject to any recognizable rule, the documents themselves are hearsay. So that's the only thing I can do is rule on things that are presented.
On appeal, Defendant contends that the proffered exhibits were relevant in that the documents indicated the nature of his condition, the extent of medication prescribed, and verified the reason for his absence. He also maintains that the evidence was relevant to the jury's determination of reasonableness on the justification issue. However, as with the testimony concerning his mental status, Defendant has failed to set forth a legal basis supporting his claim that the proffered exhibits are relevant. Accordingly, those documents were properly excluded by the trial court. Thus, Defendant's last argument, that La.Code Evid. art. 803 provides exceptions to the hearsay rule, need not be addressed since the proffered evidence was inadmissible because it was irrelevant. Accordingly, this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, Defendant's conviction is affirmed.
AFFIRMED.