The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Dudley STEPHENSON, Defendant–Appellant.

No. 04CA1288.

Colorado Court of Appeals, Div. V.

Feb. 8, 2007.

As Modified on Denial of Rehearing June 14, 2007.

ond degree murder, felony murder, aggravated robbery, and related crimes of violence. We affirm.

## I. Background

In January 1999, Stephenson was convicted of felony murder, aggravated robbery, and tampering with physical evidence. A division of this court reversed that judgment of conviction and remanded for a new trial. *People v. Stephenson*, 56 P.3d 1112 (Colo. App.2001).

On remand, he was retried and convicted of felony murder, second degree murder and an associated crime of violence, and aggravated robbery and an associated crime of violence. The evidence tampering charge was dismissed during trial. The trial court sentenced Stephenson to life in prison for felony murder, to twenty-four years for second degree murder, and to sixteen years for aggravated robbery, to be served concurrently.

According to the prosecution's evidence presented at the second trial, Stephenson and his wife decided to steal a car to move to California. They bought a gun through a classified advertisement and then located the victim, who was selling his truck through another classified ad. They contacted the victim and went to his house, feigning interest in purchasing the truck. As the victim handed Stephenson's wife some information, Stephenson fatally shot the victim in the chest.

Stephenson and his wife stole the victim's truck, drove to a nearby restaurant, and called Stephenson's mother to pick them up. Stephenson and his mother dropped his wife off at her mother's house, and then drove to his mother's house, where he washed his clothes and showered.

In the meantime, Stephenson's wife told her mother that someone had been shot, prompting her mother to call the police. When the police arrived, Stephenson's wife described the events, and the police located Stephenson at his mother's house. Stephenson told the police he knew why they were there and agreed to follow them to the police station, where he was interviewed and later

John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Jonathan D. Reppucci, LLC, Jonathan D. Reppucci, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge FURMAN.

Defendant, Dudley Stephenson, appeals from the judgment of conviction entered upon jury verdicts finding him guilty of sec-

arrested. While at the station, he gave a videotaped statement initially denying responsibility for shooting the victim, but later admitting it. He also admitted he cut his hand when the gun was fired.

In August 2003, Stephenson requested and was granted a competency evaluation, which was conducted at the Colorado Mental Health Institute at Pueblo. The doctor who completed the evaluation determined that Stephenson had "an excellent grasp of his current legal situation," was "aware of the consequences of his actions," and was competent to proceed.

At trial, Stephenson attempted to mitigate the crime from felony murder to second degree murder by arguing that he used force against the victim to eliminate him as a witness, not because he intended to steal the victim's truck.

## II. Competency Proceedings

Stephenson first contends the "totality of the circumstances" raised doubts as to his competency, and the trial court erred in proceeding to trial without ordering a second competency examination and hearing. He further contends the trial court violated his right to due process of law by failing to consider his inability to participate in his defense and failing, sua sponte, to declare a mistrial. We disagree.

Putting a defendant on trial while he is incompetent violates his or her right to due process. *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Jones v. Dist. Court,* 617 P.2d 803 (Colo. 1980). A defendant is incompetent to stand trial if he or she is not capable of understanding the nature and course of the proceedings, cannot assist in the defense, or is incapable of cooperating with defense counsel. *People v. Kilgore,* 992 P.2d 661 (Colo. App.1999).

Here, on the second day of voir dire, Stephenson informed the court that he felt ill and was experiencing dizziness and blurred vision. He requested the court to waive his presence for the remainder of that day's proceedings. As the parties conferred with the trial court about this request, the prosecutor stated:

I feel duty-bound as an officer of the Court to inform the Court that I had a conversation with [the doctor], who did the competency evaluation in September of last year, who told me in so many words ... that [Stephenson] is taking so many different medications that he's bound to be in an altered state of mind.

Defense counsel stated that this was the first time he had heard this information. The trial court suspended voir dire for two hours to allow counsel time to investigate this issue. Counsel agreed that two hours was "more than enough time."

Less than two hours later, defense counsel advised the trial court that Stephenson's psychiatrist was available to testify by phone. Outside the presence of the jury, the trial court took telephone testimony from the psychiatrist, Dr. McGrane, who stated that she had treated Stephenson for more than one year and that, based upon her observations, he was "cognitively very clear ... and has been able, in [her] opinion, to make very clear judgments." Dr. McGrane expressed her opinion that any adjustments she made to Stephenson's medications would not affect his ability to think or make decisions.

The trial court took a recess to consider Dr. McGrane's testimony and the arguments of counsel, and upon reconvening, the court engaged in the following colloquy with Stephenson:

COURT: You also were present during the time that your psychiatrist, who is providing medical attention to you and treatment, testified by phone, correct?
STEPHENSON: Correct.
COURT: Did you understand all of the things that she was saying with regard to her observation of your treatment?
STEPHENSON: Yes....
COURT: She indicated that you have been fully aware of and fully participating in that treatment. Do you believe that to be an accurate statement?
STEPHENSON: Yes, I do.
COURT: She also indicated that she believed ... that even with all of the medi-

cations that you are taking, that you are fully competent and capable of making a knowing and intelligent decision with regard to whether to be present in court or not.

STEPHENSON: Yes.

COURT: Do you agree with that?

STEPHENSON: Yes, I do.

The trial court then made the following findings:

While questions have been raised relating back to the time of the competency evaluation concerning the number of medications that Mr. Stephenson is on, neither in that report nor in this subsequent inquiry by the Court has there been any evidence presented to the Court which would lead the Court to believe that he is not competent to understand the rights he has been advised of and to knowingly, voluntarily, and intelligently exercise his right to waive his presence.

In addition, Dr. McGrane conducted a mental status examination of Stephenson the following morning before trial started, and she then testified:

DR. McGRANE: I spoke with Mr. Stephenson this morning, and performed a brief mental status examination, and he appeared to be clear and coherent and made ... I believe a well thought-out and considered decision not to be present in the courtroom, and appeared to have been able to consider the pros and cons of that decision.

COURT: Did you also evaluate his condition with regard to the medication and the ... dizziness and blurred vision that he was experiencing?

DR. McGRANE: Yes. I did not think the medication was significantly affecting his cognition. In other words, I didn't think the medication was affecting the dizziness and blurred vision. It appeared as though that was a result of anxiety and was improving rather than causing the physical symptoms.

. . . .

PROSECUTOR: [D]o you have any concerns about Mr. Stephenson being competent, as you know it? I'm not asking you to be a forensic pathologist, but as you would understand competent, do you have any concerns about that?

DR. McGRANE: No, I don't.

. . . .

COURT: [Y]ou had previously indicated that you believed he was competent within the parameters of your expertise as a psychiatrist, although not forensic. And rather than asking do you have any concerns, I would ask what your opinion is with regard to Mr. Stephenson being competent to proceed, other than the impairment that you've just advised us of.

DR. McGRANE: Mr. Stephenson has expressed to me that he understands the nature of the proceedings, and we discussed this morning that he has discussed with his attorneys that he will be able to discuss on a daily basis what has gone on in court, and he will be able to be appraised of the nature of the progress of the case.

And my assessment is that he understands the charges against him and understands the case, and he appears cognitively intact. And I believe he is competent at this time.

COURT: Once again, understanding the limitation of not being forensic, but is this opinion based upon your history of treatment of him and as well as today's observation of him?

DR. McGRANE: Yes, Your Honor.

COURT: And so you've talked to him throughout the approximate one year that you've been treating him from time to time about his proceedings and how he's feeling as it related to the medications that you've determined to be appropriate?

DR. McGRANE: Yes, Your Honor. And the fact that he is capable of understanding what's going on, that our discussions indicate that he is logical, clear, and coherent during those discussions, and that he understands his treatment and is able to make logical discussions about his medical treatment, what's going on around him. As well as his court proceedings.

The trial court then asked Stephenson questions similar to those it had posed the day before. Stephenson stated that he was

able to understand the nature of the proceedings and to assist his attorneys in the preparation of his defense, that he was not unduly under the influence of his medications, and that he believed his symptoms were a result of "the stress that [he was] experiencing during the trial."

The trial court found that Stephenson "does understand that he can communicate with his attorneys at any point in time with regard to what has transpired and any suggestions or ideas as to how to proceed with evidence." The court excused Stephenson from trial, and the proceedings continued in his absence.

### A. Competency Proceedings

A defendant is presumed to be competent to stand trial. *People v. Palmer*, 31 P.3d 863 (Colo.2001). The court shall suspend criminal proceedings, however, whenever it "has reason to believe that the defendant is incompetent to proceed." Section 16–8–110(2)(a), C.R.S.2006; *see also People v. Kilgore, supra*. The court must address the issue of competency where a lawyer's representations about a defendant's competence "either alone or in conjunction with other evidence, raise a 'bona fide doubt' of the defendant's competence." *People v. Kilgore, supra*, 992 P.2d at 663.

Because the trial court is in the best position to observe the defendant's general demeanor, its determination of competency will be upheld absent an abuse of discretion. *People v. Kilgore, supra; see also People v. Palmer, supra; Jones v. Dist. Court, supra*. To show an abuse of discretion, the defendant must establish that under the circumstances the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra*, 849 P.2d 33 (Colo.1993).

#### 1. Investigation

Stephenson contends the circumstances at trial justified a second competency examination and the trial court abused its discretion by failing to order one. We disagree.

Section 16–8–111(1), C.R.S.2006, provides: Whenever the question of a defendant's incompetency to proceed is raised, the court shall make a preliminary finding that the defendant is or is not competent to proceed. *If the court feels that the information available to it is inadequate for making such finding, it may order a competency examination or such other investigation as it deems advisable.*

(Emphasis added.)

Once the issue of competency is raised, the trial court must undertake a two-step procedure involving a preliminary finding and a final determination as to the competency of the defendant. If the court believes the available information is inadequate for a preliminary finding, it may order a competency examination or such other investigation as it deems advisable; or it may make a preliminary finding without an examination or additional investigation. *Jones v. Dist. Court, supra*.

Here, the trial court suspended voir dire after being informed that Stephenson might be in an altered state of mind as the result of his medications. The court also heard the testimony of Stephenson's treating psychiatrist twice. She first expressed her opinion that the medications did not impair Stephenson's ability to understand the proceedings or assist in his defense. Then, after she conducted a mental status exam of Stephenson, she further testified that he was competent and able to communicate with his attorneys about the case. The court also questioned Stephenson directly, and he agreed with the representations made by his psychiatrist.

We conclude that Stephenson has not established a due process violation or an abuse of discretion by the trial court in not ordering a second competency examination. *See* § 16–8–111(1); *see also People v. Mack*, 638 P.2d 257 (Colo.1981)(second competency evaluation is not required).

Stephenson nonetheless contends the trial court erred in basing its competency determination, in part, on his treating psychiatrist's opinion because she (1) is not a qualified forensic psychiatrist; (2) did not have forensic training; (3) had never performed a competency evaluation; and (4) had pre-

scribed medications the psychiatrist at the state hospital believed were inappropriate. We are not persuaded.

First, Stephenson did not request a second competency evaluation or independent psychiatric opinion. *See* § 16–8–108(1), C.R.S. 2006 ("[i]f the defendant wishes to be examined by a psychiatrist, psychologist, or other expert of his own choice in connection with any proceeding under this article, the court, upon timely motion, shall order that the examiner chosen by the defendant be given reasonable opportunity to conduct the examination").

Second, Stephenson did not establish that the trial court's decision to proceed without ordering a second competency examination was an abuse of discretion. Thus, he was not entitled to have a forensically trained psychiatrist evaluate him. *See* § 16–8–111(3.5), C.R.S.2006 ("[a] competency examination shall be conducted by a licensed psychiatrist or a licensed psychologist who is trained in forensic competency assessments").

Third, Dr. McGrane is a licensed psychiatrist who had been treating Stephenson for more than a year. She was familiar with his symptoms and diagnoses and had performed a mental status examination during trial. Moreover, defense counsel at trial did not object to her qualifications or opinions.

We therefore conclude the trial court did not err in basing its competency determination, in part, on Dr. McGrane's opinion.

### 2. Preliminary Finding

 Stephenson next contends the trial court erred by failing to make a preliminary finding of competency and by failing to notify the parties of the time within which to request a hearing on the preliminary finding of competency. We conclude the trial court made a preliminary finding of competency and more was not required.

Section 16–8–111(2), C.R.S.2006, provides:
The court shall immediately notify the prosecuting attorney and defense counsel of the preliminary finding. If neither the prosecuting attorney nor defense counsel requests, in writing, a hearing within a time limit set by the court, the preliminary finding becomes a final determination.

Here, the trial court found there had not been any "evidence presented ... which would lead the Court to believe that [Stephenson] is not competent." The court then asked trial counsel whether they wished to add anything, and defense counsel responded, "No." This finding by the trial court constitutes its preliminary finding of competency.

Because neither counsel objected to this preliminary finding, nor otherwise requested a hearing on the matter, the trial court had no obligation to set a time limit within which to hold such a hearing. The court's preliminary finding became a final determination of competency.

Accordingly, we conclude the trial court followed the statutory procedures for determining competency and was not required to further determine whether Stephenson was capable of participating in his defense, to order a second competency evaluation, or to follow the procedures for a court-ordered examination under § 16–8–106, C.R.S.2006.

In light of our conclusion that the trial court did not violate Stephenson's due process rights, we have determined that the court did not err in failing to declare a mistrial.

### B. Discovery Violation

 Stephenson contends for the first time on appeal that the prosecution's late disclosure regarding concern over Stephenson's medications violated Crim. P. 16, and the trial court erred in not, sua sponte, declaring a mistrial. We disagree.

 Because Stephenson did not raise this argument at trial, we review his contention under a plain error standard. *See* Crim. P. 52(b); *People v. Boykins*, 140 P.3d 87, 95 (Colo.App. 2005). Under a plain error standard, we will not overturn the trial court unless, after reviewing the entire record, we conclude the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987).

We conclude the prosecution's late disclosure does not rise to the level of plain error. First, the disclosure did not relate to Stephenson's competency, but to divergent opinions of medical doctors about antipsychotic medications. Second, the trial court suspended voir dire for two hours—which defense counsel conceded was "more than enough time"—to allow the parties to investigate this issue. Thus, because Stephenson was not prejudiced by the late disclosure, any error did not undermine the fundamental fairness of the trial. *People v. Boykins, supra.*

### III. Waiver of Right to be Present at Trial

Stephenson next contends the waiver of his right to be present was not made knowingly, intelligently, or voluntarily. We disagree.

■ An accused has a constitutional right to be present at trial. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *Luu v. People,* 841 P.2d 271 (Colo.1992); *People v. James,* 937 P.2d 781 (Colo.App.1996). This right, however, is not absolute and may be waived. *Luu v. People, supra.*

■ A division of this court has determined that the trial court is responsible to ensure that a waiver of the right to be present is valid. *People v. Campbell,* 785 P.2d 153 (Colo.App.1989), *rev'd on other grounds,* 814 P.2d 1 (Colo.1991). A waiver may be valid whenever the defendant is voluntarily absent after the trial has been commenced in his presence. *Luu v. People, supra.*

In *Campbell,* the division held that, under Crim. P. 43(b), when a defendant wishes to "voluntarily absent" himself, and is available for inquiry, the preferred approach is for the trial court to advise the defendant of the right to attend trial and determine whether the defendant knowingly, intelligently, and voluntarily waives that right. *People v. Campbell, supra,* 785 P.2d at 155.

While we acknowledge that *Campbell* is the preferred approach when a defendant is available for inquiry and wishes to voluntarily absent himself or herself from trial, we also note that the United States Supreme Court has held that a waiver can occur whether or not the defendant "has been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence." *Taylor v. United States,* 414 U.S. 17, 19, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973).

#### A. Knowing and Intelligent

Stephenson contends that because of his mental illness, he was not fully aware of the consequences of being absent from his trial, that he did not make a conscious, informed choice to be absent, and that his waiver was not made knowingly or intelligently. We disagree.

■ A defendant's absence from the trial does not by itself establish a valid waiver. Rather, we have concluded that the preferred approach imposes a duty on the trial court to advise the defendant on the record of the consequences of being absent from trial and to determine whether the absent defendant "knowingly intended to waive his right to be present." *People v. Campbell, supra,* 785 P.2d at 155.

■ A waiver is knowing and intelligent when, inter alia, the defendant has had notice of the consequences of not appearing. *In re Bauer,* 30 P.3d 185 (Colo.2001).

■ Here, Stephenson expressed his desire not to be present several times: during voir dire, after Dr. McGrane's telephone testimony, after her live testimony, before the introduction of his videotaped police interview, and before the first defense witness was called to testify.

At the time of each request by Stephenson that he be excused from the trial, the trial court engaged in a colloquy with him similar to the following:

COURT: Even though you are not feeling well, do you believe that you understand all of the rights that I've indicated, meaning your right to be present, your right to confront witnesses, and your right to communicate with your attorneys concerning your defense?

STEPHENSON: Yes, Your Honor.

COURT: Do you believe that you understand the importance of you being at the trial?

STEPHENSON: Yes, Your Honor.

COURT: Given the importance of those rights and the way you are feeling, which none of us know how that is, how would you balance those rights versus the way you're feeling that you cannot and would prefer not to attend?

STEPHENSON: I think me not being present would overweigh my rights.

COURT: I'm not sure that I understand.

STEPHENSON: I understand the importance of my rights, but I think it's more important for me not to be present.

COURT: And that's your preference?

STEPHENSON: Yes.

Stephenson repeatedly stated that he did not want to be present even after the trial court offered him various alternatives and accommodations, including taking long breaks and delaying the proceedings or resetting the trial until his illnesses had abated. Stephenson's repeated statements that he preferred not to be present at trial were corroborated by the testimony of Dr. McGrane, who stated that Stephenson had made "a well thought-out and considered decision not to be present in the courtroom, and appeared to have been able to consider the pros and cons of that decision."

Accordingly, we conclude there is extensive record support for the trial court's findings that Stephenson was aware of his right to be present at trial and of the consequences of being absent; that he made a conscious, informed choice to be absent; and, that therefore, his waiver was made knowingly and intelligently. *See People v. Campbell, supra.*

### B. Voluntary

Stephenson also contends his documented symptoms compromised his ability to be present at his trial and actively to participate in his defense, and thus, his decision to be absent was involuntary. Again, we disagree.

■ The fact that a defendant's absence is knowing and intelligent does not establish that it is voluntary. *See State v. Wanosik,* 31 P.3d 615, 623 n. 8 (Utah Ct.App. 2001), *aff'd,* 79 P.3d 937 (Utah 2003). An absence is voluntary if the defendant knows that the proceedings are taking place and does not attend. *See Crosby v. United States,* 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993).

■ We reject Stephenson's contention that his medications were being "unjustifiably administered to him." At trial, he repeatedly informed the court that he agreed with and cooperated in his medical treatment plan, and defense counsel did not contradict these statements.

The constitutional requirement for a trial proceeding when the defendant is voluntarily absent is implemented in Crim. P. 43(b). This rule provides, in pertinent part:

> The trial court in its discretion may complete the trial, and the defendant shall be considered to have waived his right to be present, whenever a defendant, initially present: (1) [v]oluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to remain during the trial. . . .

This rule is nearly identical to Fed. R.Crim.P. 43(b), which codified the rule from *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). *See Crosby v. United States, supra.*

Because Fed.R.Crim.P. 43(b) is similar to Crim. P. 43(b)(1), we may look to federal cases that have addressed the voluntariness issue. *See People v. Dore,* 997 P.2d 1214 (Colo.App.1999) (when a federal rule is similar to a state rule, we may look to the interpretation of that rule for guidance); *see also People v. Medina,* 72 P.3d 405 (Colo. App.2003).

A majority of federal cases construing Fed.R.Crim.P. 43(b) have held that a defendant's absence from trial compelled by a medical necessity generally constitutes a "voluntary absence." *See United States v. Edwards,* 303 F.3d 606 (5th Cir.2002) (codefendant held voluntarily absent where he failed to keep trial court informed of his medical decisions and delayed necessary

medical treatment until after trial commenced); *United States v. Crites,* 176 F.3d 1096 (8th Cir.1999)(defendant's attempted suicide, which left him unconscious and hospitalized, constituted voluntary conduct that rendered him voluntarily absent); *United States v. Barton,* 647 F.2d 224 (2d Cir.1981)(defendant held voluntarily absent where he elected to undergo medically necessary spinal surgery one week before trial). *But see United States v. Latham,* 874 F.2d 852 (1st Cir.1989) (concluding defendant not voluntarily absent for trial where he ingested a potentially lethal overdose of cocaine).

The majority of state courts that have decided this issue have reached similar conclusions. *See, e.g., State v. King,* 799 So.2d 1241 (La.Ct.App.)(depressed, schizophrenic defendant who was hospitalized with suicidal ideation held voluntarily absent); *State v. Clark,* 327 Mont. 474, 115 P.3d 208 (2005)(defendant hospitalized for chest pains held voluntarily absent). *But see State v. Okumura,* 58 Haw. 425, 570 P.2d 848 (1977) (concluding defendant not voluntarily absent where injuries he received from a failed escape attempt were not voluntarily inflicted).

■ We agree with the majority view and adopt the reasoning of those courts, concluding that absence from trial compelled by medical necessity may generally be deemed voluntary, and that determining whether a defendant is "voluntarily absent" in such a case requires a fact-specific inquiry into the type of medical condition and the circumstances surrounding his or her absence, including an inquiry into the defendant's conduct and statements.

Here, the record refutes Stephenson's contention that his decision to absent himself from his trial was involuntary because of his medical conditions. This evidence includes his repeated statements that he did not want to attend the trial, and the court's lengthy and repeated advisements and inquiry into Stephenson's reasons for his decision, as discussed earlier.

We therefore conclude Stephenson's decision not to attend trial was a voluntary decision.

## IV. Remarks to the Jury Venire

Stephenson's last contention is that the trial court erred in not declaring a mistrial and in refusing to give the jury a curative instruction after it read to the jury venire a previously dismissed charge of possession of a weapon by a previous offender. Stephenson maintains that his prior criminality was improperly conveyed to the jury. We disagree.

■ Even if we assume the trial court should have provided a curative instruction, we conclude any error was harmless because (1) Stephenson had a full and fair opportunity to determine during voir dire whether any juror was unduly prejudiced; (2) the court again read the charges when the jury was selected and did not include the dismissed charge; and (3) the jury was given the pattern instruction providing that charges against the defendant are not evidence. *See* CJI–Crim. 3:03 (1983) ("The charge against the defendant is not evidence."); *see also Young v. Clark,* 814 P.2d 364 (Colo.1991) (pattern instruction sufficient); *People v. Garcia,* 1 P.3d 214 (Colo.App.1999) (instruction in the language of the statute generally sufficient), *aff'd,* 28 P.3d 340 (Colo.2001).

We further conclude there was overwhelming evidence of guilt introduced against Stephenson, including his videotaped confession. *See People v. Smith,* 77 P.3d 751 (Colo.App.2003)(trial court's erroneous ruling is harmless when the evidence properly received is overwhelming).

In light of our holding, we need not address Stephenson's remaining contentions.

The judgment is affirmed.

Judge DAILEY and Judge HAWTHORNE concur.