19CA1391 Peo v Ricker 11-10-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA1391 El Paso County District Court No. 17CR1191 Honorable Marla Prudek, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Jake Ricker, Defendant-Appellant. JUDGMENT AFFIRMED, SENTENCE VACATED, AND CASE REMANDED WITH DIRECTIONS Division IV Opinion by JUDGE FREYRE J. Jones and Tow, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 10, 2021 Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Mallika L. Magner, Alternate Defense Counsel, Crested Butte, Colorado, for Defendant-Appellant 
 1 ¶ 1 Defendant, Jake Ricker, appeals his convictions of first degree burglary, aggravated robbery, and felony menacing. He contends that the trial court violated his constitutional right to be present by holding the trial in his absence following a medical emergency. He also appeals the proportionality of his sentence. We affirm Ricker’s convictions, but we vacate his sentence, remand for resentencing under section 18-1.3-801(2), C.R.S. 2021, and direct the trial court to conduct an abbreviated proportionality review after resentencing. I. Background ¶ 2 Kayla O’Connor visited her uncle, Timothy Crooks, and two friends at Crooks’s apartment. While waiting for their pizza to arrive, O’Connor heard a knock at the door and saw two men through the peephole. When she opened the door, Ricker pointed a gun in her face and ordered her and the two friends to the ground. O’Connor tried to shut the door, but Ricker and another man forced their way in. Crooks ran from the apartment via a back balcony. ¶ 3 Ricker held the three victims at gunpoint while the other man searched the apartment. Ricker paced over the victims and threatened to shoot them if they moved or made noise. He repeatedly asked where “Tim” was because they were there to kill 
 2 him. Ricker then told the victims to put their arms out while he searched them and O’Connor’s purse. He took O’Connor’s wedding ring and items from her wallet. He also took each victim’s phone and keys, along with a revolver. The other man found a safe and demanded that the victims open it. None of them could open it or say where Crooks had gone. ¶ 4 Meanwhile, Crooks called 911 from outside the apartment to report that armed men had invaded his apartment and that they were holding women inside. While he was on the phone with 911, Crooks saw the other man leave his apartment and drive away. ¶ 5 The police arrived as Ricker was leaving the apartment and they arrested him. In a search incident to the arrest, police seized a loaded handgun, a revolver, O’Connor’s keys, and cell phones. ¶ 6 The People charged Ricker with one count of attempted first degree murder, one count of burglary, three counts of aggravated robbery, and four counts of menacing. It later added four habitual criminal counts. The jury acquitted Ricker of attempted murder, but it convicted him of the remaining charges. The jury further found that Ricker had used or possessed a deadly weapon and 
 3 threatened the use of a deadly weapon in the commission of burglary and aggravated robbery. ¶ 7 In a separate trial, the court convicted Ricker of the habitual criminal counts. It then sentenced him to life in the custody of the Department of Corrections with the possibility of parole after forty years, under section 18-1.3-801(1)(a), for his burglary and aggravated robbery convictions. The court also sentenced Ricker to concurrent twelve-year sentences for each of his menacing convictions. II. Right to be Present ¶ 8 Ricker first contends that the trial court deprived him of his constitutional right to be present. He argues that the court abused its discretion by denying his motion for a mistrial or a continuance of the trial because insufficient evidence showed that he voluntarily waived his right to be present. We perceive no abuse of discretion. A. Additional Facts ¶ 9 Ricker appeared for the first day of trial, but he did not return the second day. Defense counsel informed the court that Ricker had been taken to the hospital for a possible drug overdose. Ricker’s prognosis and expected release date were unknown. 
 4 Counsel did not know whether Ricker would be subject to a hold for “any reason.” The court took a break so the parties could find out more information and research their options. ¶ 10 After returning, a detective reported that he had spoken with the two officers who responded to the medical assistance call. Ricker’s girlfriend told the officers that Ricker was awake at approximately 6 a.m. and said, “I can’t go to prison for the rest of my life.” Ricker’s mother said that when she went to wake him for court an hour later, she found him unresponsive due to an overdose. She called 911, and medical professionals were able to revive him with NARCAN. Both Ricker’s girlfriend and his mother said that he knew he had to be in court and that they believed the overdose was intentional. His mother also said Ricker would be “pissed” at her for calling for help. The detective further learned that Ricker was awake, he was being transferred to the intensive care unit, and his prognosis and release date were unknown. ¶ 11 Defense counsel moved for a mistrial and argued that insufficient evidence showed that Ricker’s absence was voluntary. He argued that there was insufficient evidence to show that Ricker intentionally overdosed to delay the trial. He further argued that 
 5 the girlfriend’s and mother’s statements were insufficient to show that Ricker’s overdose was an attempted suicide. Alternatively, counsel requested a continuance of the trial. The court denied both requests and found that Ricker had voluntarily absented himself from the trial, based on the detective’s report and Ricker’s present medical status. The court reasoned, [Defense counsel] has argued that there’s a possibility that [Ricker] was just trying to steady his nerves. We don’t know how much heroin he used, and we don’t have a note. [Defense counsel] has pointed out that we don’t have a suicide note, but we do have what seem to be excited utterances, spontaneous statements by the girlfriend and his mother that he had indicated, the defendant had indicated clearly to both of them that he could not go to prison for the rest of his life as early as [6 a.m.] this morning, so this very day. When he woke up, Mr. Ricker was sitting on the edge of the bed, according to the girlfriend, saying, I can’t go to prison for the rest of my life. So that does, to the Court, pretty clearly indicate that this was a voluntary ingestion of drugs, a voluntary overdose, that he intended to avoid going to prison for the rest of his life. ¶ 12 The court also expressed concerns about the age of the case, the number of previous delays, and losing witnesses, because 
 6 O’Connor was the only remaining eyewitness available to testify. It completed the trial in Ricker’s absence. B. Standard of Review and Applicable Law ¶ 13 Our review of a trial court’s voluntary waiver determination presents a mixed question of fact and law. People v. Price, 240 P.3d 557, 560 (Colo. App. 2010). We review the court’s factual findings for clear error. People v. Daley, 2021 COA 85, ¶ 26. Under this standard, we will “set aside a trial court’s factual findings only when they are so clearly erroneous as to find no support in the record.” People v. Beauvais, 2017 CO 34, ¶ 22. But we review whether a trial court violated a defendant’s constitutional right to be present de novo. People v. Janis, 2018 CO 89, ¶ 14. ¶ 14 The Sixth Amendment guarantees a defendant the right to be present during all stages of his trial. Illinois v. Allen, 397 U.S. 337, 338 (1970). This right is not absolute, and “[a] defendant may waive [his] right to be present either expressly or through [his] conduct.” Janis, ¶ 17; see also Price, 240 P.3d at 560. ¶ 15 Under Crim. P. 43(b)(1), [t]he trial court in its discretion may complete the trial, and the defendant shall be considered to have waived his right to be 
 7 present, whenever a defendant, initially present . . . [v]oluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to remain during the trial. The purpose of this rule is to prevent a defendant from frustrating the progression of a trial by his own actions. Taylor v. United States, 414 U.S. 17, 20 (1973). ¶ 16 The trial court is responsible for ensuring that a defendant’s waiver of the right to be present is voluntary, knowing, and intelligent. Price, 240 P.3d at 560. A defendant’s absence can be considered voluntary when the record establishes that he created the medical necessity underlying the absence. People v. Stephenson, 165 P.3d 860, 869-70 (Colo. App. 2007). Attempted suicide qualifies as a voluntary absence. Price, 240 P.3d at 560-61. ¶ 17 In addition, “[t]rial courts have broad discretion in deciding whether to grant or deny a continuance.” People v. Travis, 2019 CO 15, ¶ 12. Thus, we review the trial court’s denial of a motion for a continuance for an abuse of discretion. People v. Brown, 2014 CO 25, ¶ 19. 
 8 C. Analysis ¶ 18 We discern no abuse of discretion in the trial court’s finding that Ricker’s absence was voluntary because the record shows the following: • Ricker appeared for the first day of his trial, and the court advised him of his right to testify. • Ricker’s mother confirmed, through the police, that Ricker knew he had to be in court the morning of the second day of trial. • Ricker was awake and alert at 6 a.m. on the second day of trial and told his girlfriend, “I can’t go to prison for the rest of my life” approximately one hour before he was found unresponsive. • Ricker’s girlfriend told the police twice that she believed he had intentionally overdosed. • Ricker’s mother told police that Ricker “continually talk[ed] about how long he would be away and how hard it would be to start his life over as an old man if he got out of prison someday.” 
 9 • Ricker’s mother believed Ricker overdosed on purpose and that he would be “pissed at her because she called [911].” ¶ 19 We also reject Ricker’s argument that the court improperly relied on “multiple layers of hearsay” to find his absence voluntary. Ricker does not cite, nor are we aware of, any authority precluding a court from considering such evidence. In any event, the court recognized the hearsay nature of the information when it characterized the girlfriend’s and mother’s statements to the police as “excited utterances,” CRE 803(2) (“A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.”), and “spontaneous statements,” CRE 803(1) (“A spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition.”), which are exceptions to the rule against hearsay. Ricker does not challenge this legal ruling, so we do not address it further. See People v. Liggett, 2021 COA 51, ¶ 53 (appellate courts do not address undeveloped arguments). 
 10 ¶ 20 We also discern no abuse of discretion in the court’s denial of Ricker’s motion to continue the trial. Ricker faults the court for making an insufficient inquiry into his medical status. However, the record shows that the court delayed the trial for two hours to obtain more information and learned that Ricker was in the intensive care unit and that his prognosis was unknown. Thus, unlike the circumstances in People v. Trefethen, 751 P.2d 657, 658-
59 (Colo. App. 1987), where the court learned the defendant had experienced car trouble, did not know his whereabouts, and waited two hours before reconvening the trial, the trial court here knew Ricker’s location and that his prognosis was unknown. Moreover, defense counsel produced no additional evidence regarding Ricker’s probable return to support the continuance request. ¶ 21 Finally, the court properly considered the age of the case, the fact that the case had experienced six previous delays, the fact that of the four eyewitnesses to the incident, only O’Connor was available to testify, and the fact that the trial was halfway completed.
1 Under these circumstances, we discern no error in the 1 O’Connor testified the first day of trial, so Ricker was able to confront the only eyewitness to the incident. 
 11 trial court’s voluntariness finding or in its decision to complete the trial in Ricker’s absence. III. Habitual Offender Sentences ¶ 22 Ricker next challenges the length of his sentences. But as noted by the People, the trial court erroneously sentenced Ricker to life imprisonment with the possibility of parole after forty years, under section 18-1.3-801(1)(a). Because Ricker should have been sentenced under section 18-1.3-801(2)(a)(I), we vacate his sentence and remand the case for resentencing and a new abbreviated proportionality review. A. Standard of Review ¶ 23 We review de novo the legality of a sentence. People v. Wiseman, 2017 COA 49M, ¶ 22. A sentence is illegal if it is “inconsistent with the statutory scheme outlined by the legislature.” People v. Rockwell, 125 P.3d 410, 414 (Colo. 2005). A party may request a correction of an illegal sentence at any time, even for the first time on appeal. People v. Magana, 2020 COA 148, ¶ 59 (cert. granted May 24, 2021). 
 12 B. Analysis ¶ 24 At the habitual criminal trial, the court found that the prosecution proved the following habitual criminal counts beyond a reasonable doubt: • a 1995 conviction for theft by receiving (case no. 94CR3566), a class 4 felony; • a 1995 conviction for attempted theft (case no. 95CR3174), a class 5 felony; • a 1998 conviction for aggravated robbery (case no. 97CR4530), a class 3 felony; and • a 1998 conviction for aggravated robbery (case no. 97CR4533), a class 3 felony. ¶ 25 Thereafter, the court sentenced Ricker to life imprisonment, based on the two aggravated robbery convictions from 1998 and its belief that these convictions constituted crimes of violence. ¶ 26 Section 18-1.3-801(1)(a) provides: A person shall be adjudged a[] habitual criminal and shall be punished by a term in the department of corrections of life imprisonment if the person: (I) Is convicted of: 
 13 (A) Any class 1 or class 2 felony or level 1 drug felony; or (B) Any class 3 felony that is a crime of violence, as defined in section 18-1.3-406(2), [C.R.S. 2021]; and (II) Has been twice convicted previously for any of the offenses described in subparagraph (I) of this paragraph (a). (Emphasis added.) ¶ 27 However, as noted by the People, aggravated robbery does not always constitute a crime of violence for habitual criminal sentencing purposes. Indeed, only one form of aggravated robbery is a per se crime of violence. See § 18-4-302(1)(b), (4), C.R.S. 2021. And, the People can specifically charge aggravated robbery as a crime of violence. See § 18-1.3-406(2)(a)(II)(F), (3). But the record reveals that neither of Ricker’s prior aggravated robbery convictions constitutes a crime of violence and, thus, that the court erred by sentencing him under section 18-1.3-801(1)(a). ¶ 28 Accordingly, we vacate the habitual criminal sentences and remand for resentencing under the correct habitual offender sentencing provision, section 18-1.3-801(2). Because Ricker has also requested an abbreviated proportionality review, we direct the 
 14 trial court to conduct this review consistent with Wells-Yates v. People, 2019 CO 90M. IV. Conclusion ¶ 29 The judgment is affirmed. The sentence is vacated, and the case is remanded for resentencing under section 18-1.3-801(2) and for an abbreviated proportionality review. JUDGE J. JONES and JUDGE TOW concur.