The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Kelly James PHILLIPS, Jr.,
Defendant–Appellant.

No. 07CA0363.

Colorado Court of Appeals,
Div. III.

Aug. 6, 2009.

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Cory D. Riddle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Kelly James Phillips, Jr., appeals the judgments of conviction entered upon jury verdicts finding him guilty of first degree (felony) murder, two counts of attempted first degree (after deliberation) murder, two counts of first degree assault, three counts of felony menacing, two counts of child abuse, burglary, and attempted robbery. We affirm.

The present case arises out of two separate incidents that occurred on July 5 and July 8, 2005. We mention both incidents because, while defendant's first argument affects the validity of only one conviction arising out of the second incident, defendant's other argument affects the validity of all convictions arising out of both incidents.

On July 4, defendant got into an argument with his brother-in-law about a previous confrontation between the brother-in-law and defendant's mother. The next day, defendant shot the brother-in-law three times, but did not kill him.

On July 8, defendant went to see M.Z. When M.Z. came outside the front door to see defendant, defendant immediately shot him once in the head, killing him. Defendant then entered the house, proceeded to a back bedroom, found J.M., demanded "the drugs" from J.M., and shot him through the upper lip, severely injuring, but not killing, him. When defendant tried to shoot J.M. again, his gun jammed, and defendant assaulted him. J.M. fought back, and the two men took their fight out to the front yard, where police arrested defendant.

The trial court sentenced defendant to life without parole and an aggregate term of one hundred years imprisonment.

### I. Felony Murder: Sufficiency of Evidence

■ Defendant contends that there was insufficient evidence to convict him of felony murder. Specifically, he argues that the prosecution presented no evidence that he possessed the necessary intent to commit an underlying felony at the time he shot M.Z. We disagree.

■ We review a challenge to the sufficiency of the evidence de novo. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005). In assessing the sufficiency of the evidence, we must determine, after viewing both direct and circumstantial evidence in the light most favorable to the prosecution, whether the evidence was sufficient both in quantity and quality to prove the charges beyond a reasonable doubt. *Id.* We give the prosecution every reasonable inference which can be fairly drawn from the evidence. *People v. Johnson,* 923 P.2d 342, 346 (Colo.App.1996). If there is evidence upon which the jury may reasonably infer an element of the crime, the evidence is sufficient to sustain that element. *People v. Grant,* 174 P.3d 798, 812 (Colo.App. 2007). Where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *Id.*

A person commits felony murder when, as relevant here,

> he or she commits or attempts to commit ... robbery [or] burglary ... and, in the course of or in furtherance of the crime that he or she is committing or attempting to commit, ... the death of a person ... is caused by anyone.

§ 18–3–102(1)(b), C.R.S. 2008.

The felony murder statute is "broad in scope," *Auman v. People,* 109 P.3d 647, 655 (Colo.2005), and applies when the felony and the killing are "so closely connected in point of time, place and continuity of action as to be one continuous transaction." *People v. McCrary,* 190 Colo. 538, 553, 549 P.2d 1320, 1331–32 (1976) (quoting *Bizup v. People,* 150 Colo. 214, 218, 371 P.2d 786, 788 (1962)).

Under the felony murder statute, there is no requirement that the defendant intend the death of the victim. *People v. Scheer,* 184 Colo. 15, 21, 518 P.2d 833, 835 (1974) (specific intent to take a human life is not an element of felony murder); *People v. Fisher,* 9 P.3d 1189, 1191 (Colo.App.2000) ("[F]elony murder is a strict liability crime [that] requires as one of its elements that the [defendant] commit a predicate felony."). Rather, "[l]iability arises from the defendant's participation in, and intent to commit, one of the ... predicate[ ] felonies [i.e., robbery or burglary]," and "the intent to kill is imputed from the participant's intent to commit the predicate felony." *Auman,* 109 P.3d at 655; *see also Fisher,* 9 P.3d at 1191 (underlying felony substitutes for the culpable mental state in felony murder).

Here, defendant argues that the felony murder charge must be vacated because there was no evidence that he had formed the intent to commit either robbery or burglary at the time he shot M.Z. Therefore, he argues, any conclusion that he had the requisite intent to commit either felony prior to shooting M.Z. would be impermissible speculation. We disagree.

An actor's state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence. *People v. Thompson,* 121 P.3d 273, 278 (Colo.App. 2005). The specific intent to commit a crime may, therefore, be inferred from the defendant's conduct and the overall circumstances. *People v. Howard,* 89 P.3d 441, 444 (Colo. App.2003) (second degree assault); *People v. Germany,* 643 P.2d 776, 777 (Colo.App.1980) (theft).

A division of this court held in *People v. Braxton,* 807 P.2d 1214 (Colo.App.1990), that the felony murder statute

> does not require a finding that the defendant was committing the predicate felony at the time he caused a death. [A]s a matter of law, ... the sequence of events is irrelevant as long as sufficient evidence is produced to show that a felony was committed by the defendant and that a death occurred during the commission of that felony.

*Id.* at 1217 (citations omitted).

Where, as here, there is a close temporal and spatial relationship between a killing and

subsequent felony, the defendant's intent to commit the underlying felony may be inferred from the circumstances. This conclusion is consistent with that of other courts that have addressed similar factual circumstances. *See Commonwealth v. Legg,* 491 Pa. 78, 417 A.2d 1152, 1155 (1980) (the intent to commit the felony when the act of killing occurred can be established by an inference arising from the circumstances or acts committed very shortly after the killing); *State v. Buggs,* 995 S.W.2d 102, 108 (Tenn.1999) ("a jury may reasonably infer from a defendant's actions immediately after a killing that the defendant had the intent to commit the felony prior to, or concurrent with, the killing"); *Nelson v. State,* 848 S.W.2d 126, 131 (Tex. Crim.App.1992) (evidence showing that a robbery took place immediately after a killing is sufficient to infer that the killing took place in the course of the robbery); *Bouwkamp v. State,* 833 P.2d 486, 492 (Wyo.1992) (a jury may infer intent if the interrelationship between the predicate felony and the killing constituted one continuous transaction).

Our review of the record reveals that (1) defendant and M.Z. had been friends since childhood; (2) M.Z. and J.M. were known to sell drugs from time to time; (3) on July 8, defendant arrived at M.Z.'s girlfriend's house, looking for M.Z.; (4) M.Z. went outside to meet defendant, and defendant immediately shot and killed him; (5) defendant then opened the door and walked into the house, past M.Z.'s girlfriend, and directly to the back bedroom; (6) once in the back bedroom, defendant pointed his gun at J.M. and demanded to know "where the drugs were"; (7) J.M. denied having any drugs; and (8) defendant shot J.M. in the face, severely injuring, but not killing, him.

Defendant does not argue that any intervening acts occurred between M.Z.'s death and the commission of the robbery and burglary that would separate them as individual transactions, nor do we find evidence of any such intervening acts in the record.

Construing the evidence in the light most favorable to the prosecution, a reasonable juror could conclude that the killing and attempted robbery and burglary were so closely connected as to be one continuous transaction. Further, we conclude that, while there is no *direct* evidence of defendant's intent, sufficient *circumstantial* evidence exists from which the jury could infer that defendant formed the necessary intent to commit either burglary or robbery prior to or concurrent with his shooting of M.Z.

Thus, there is sufficient evidence to support the conviction.

### II. Challenges for Cause

■ We also reject defendant's contention that the trial court erred in denying his challenges for cause to two prospective jurors.

During voir dire, Juror 4 expressed her opinion that if defendant chose not to testify "he must have something to hide," and Juror 11 indicated that he would have difficulty in giving defendant the benefit of a presumption of innocence. The trial court denied defendant's challenges for cause to both jurors because it found that they would be able to follow the law.

■ A trial court must sustain a challenge for cause if a juror's state of mind evinces enmity or bias toward either side, unless the court is satisfied that the juror will render an impartial verdict based solely on the law and the evidence submitted to the jury at the trial. § 16–10–103(1)(j), C.R.S.2008; Crim. P. 24(b)(1)(X). A prospective juror who makes a statement that may exhibit actual bias may sit on the jury so long as he or she agrees to set aside any preconceived notions and make a decision based on the evidence and the court's instructions. *People v. Lefebre,* 5 P.3d 295, 300 (Colo.2000); *Carrillo v. People,* 974 P.2d 478, 487 (Colo.1999).

■ Great deference is given to the trial court's determination of a challenge for cause, because such decisions turn on an assessment of the juror's credibility, demeanor, and sincerity in explaining his or her state of mind. Because the trial court is in a better position to evaluate these factors than a reviewing court, a reviewing court will overturn a trial court's decision only upon an affirmative showing of an abuse of discretion. *People v. Shreck,* 107 P.3d 1048, 1057 (Colo. App.2004).

In determining whether a trial court has abused its discretion, we must examine the prospective juror's entire voir dire. *Carrillo,* 974 P.2d at 486.

■ Ordinarily, a trial court's decision to deny a challenge for cause will be upheld on appeal where the record contains a general statement by a juror that, despite any pre-conceived bias, he or she could follow the law and rely on the evidence at trial. *See People v. Young,* 16 P.3d 821, 825 (Colo.2001) (juror's statement that he "would judge the case based solely on its facts and would apply the presumption of innocence," despite having said being charged with a crime was the same as being guilty); *People v. Blessett,* 155 P.3d 388, 393 (Colo.App.2006) (despite juror's bias toward police officers, juror indicated he could decide the issues based on the law and the evidence); *People v. Montoya,* 141 P.3d 916, 919–20 (Colo.App.2006) (juror agreeing to "hold the prosecution to proving [the] case beyond a reasonable doubt," despite empathy for friend who was victim of similar crime).

As to Juror 4, she indicated that she wanted to be "fair and impartial to both sides." After she expressed her opinion about defendant's decision not to testify, the trial court explained to her that (1) by law, defendant was not compelled to testify and (2) his decision not to do so could not be used against him in any way. Juror 4 then said she could follow that principle of law.

Defendant contends that, in agreeing to follow the law but not to explicitly set aside her bias as to defendant's right not to testify, it appeared "doubtful" that Juror 4 would follow the court's instructions. *See Morgan v. People,* 624 P.2d 1331, 1332 (Colo.1981) (where a juror expresses doubt about his or her ability or willingness to apply the law, failure to excuse him or her is an abuse of discretion). We are not persuaded.

The trial court found credible Juror 4's statements that she wanted to "be fair and impartial" and "follow that principle of law," and these statements provide sufficient evidence of her ability to be a fair and impartial

juror. We thus perceive no abuse of discretion.

■ We also reach a similar conclusion with regard to the trial court's ruling on Juror 11. Juror 11 indicated that he would have trouble applying the presumption of innocence due to the number of charges brought against defendant because they would "stack the odds against [defendant]" and make it hard for Juror 11 to not form an opinion before the evidence was presented.

After the court explained that a guilty verdict on one charge should not influence his feeling on another charge, Juror 11 indicated that, while he "would find it difficult," he could "try not to have a bias" and "follow the law and consider each charge separately, uninfluenced by the fact that there may be other charges." He also stated that he was able to follow the law in applying the presumption of innocence and "could put these feelings of discomfort aside."

Defendant argues that Juror 11's statements that he "would have to" set aside his discomfort with the number of charges and that he would "try not to have bias" based on those charges were too equivocal to establish that he could set aside his bias and properly apply the presumption of innocence. We disagree.

Juror 11's statements were not too equivocal to allow the trial court to deny the challenge for cause. The mere fact that a juror's answers to questions are equivocating or contradictory is not enough, by itself, to overturn the denial of a challenge for cause. *People v. Harlan,* 8 P.3d 448, 464 (Colo.2000). It is in exactly these types of situations that the trial court has the greatest amount of discretion. *See Dunlap v. People,* 173 P.3d 1054, 1087 (Colo.2007) ("We are in no position, on appellate review of a cold record, to judge which of a juror's ... equivocal answers rings the most true; it is for the trial judge to perform such evaluation." (quoting *People v. Davis,* 794 P.2d 159, 206 (Colo. 1990))); *see also Carrillo,* 974 P.2d at 487 (it is the trial judge that is "able to assess fully the attitudes and state of mind of a potential juror by personal observation of the signifi-

cance of what linguistically may appear to be ... self-contradictory responses to difficult questions" (quoting *People v. Sandoval*, 733 P.2d 319, 321 (Colo.1987))).

Here, Juror 11 indicated that he (1) would try not to have a bias, (2) would follow the law, and (3) could put his feelings of discomfort aside. The facts here do not give us reason to second-guess the trial court's determination that Juror 11 would comply with his statements and properly apply the law.

The judgments of conviction are affirmed.

Judge TERRY and Judge CRISWELL * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2008.