22CA0674 Peo v Albayero 04-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0674
Adams County District Court No. 20CR87
Honorable Roberto Ramírez, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Alexander Albayero,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Brown and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

---

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Mark G. Walta, Alternate Defense Counsel, Littleton, Colorado, for Defendant-Appellant

¶ 1     Defendant, Alexander Albayero, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree murder.  We affirm.

## I.     Background

¶ 2     The People charged Albayero with the first degree murder of Juan Manuel Galindo Argumedo.  The charge arose from a dispute that began inside Las Adelitas Night Club on East Colfax Avenue in Aurora.  The club is bordered on one side by a motel and on the other by an automobile repair shop.  Behind the club, across the alley, is a self-service car wash.  Patrons enter and leave the club through a rear door on the side of the club facing away from Colfax.  That door opens to a large parking lot adjoining the alley.

¶ 3     Albayero and his wife arrived at the club at approximately 9:30 p.m.  Albayero was wearing a yellow jacket with a black stripe on the hood.  Galindo Argumedo arrived shortly thereafter.

¶ 4     Throughout the evening, Albayero repeatedly complained to the club staff about Galindo Argumedo's offensive behavior towards Albayero's wife.  Marco Martinez, one of the club's DJs, intervened to move Galindo Argumedo away from Albayero and his wife more than once.

1

¶ 5    Later in the evening, Albayero briefly left the club with three other men. When he came back into the club, he had his hands in his pockets, and the security guard didn't frisk him. Albayero continued to complain to Martinez about Galindo Argumedo's behavior. Martinez testified that Albayero was very angry and said to him, "Now you guys are going to find out who I am."

¶ 6    At that point, Martinez had a security guard escort Galindo Argumedo out of the club. Security directed Galindo Argumedo down the stairwell to the parking lot. Albayero followed behind and passed him at the bottom of the staircase. Surveillance video from the surrounding businesses showed both Albayero and Galindo Argumedo leaving the club and walking into the parking lot. The two then went into an alley that wasn't covered by surveillance cameras. No one else was seen in the area at this time. Moments later, video shows Galindo Argumedo walking to the other end of the alley, rubbing his chest, and then collapsing on the road. Albayero came out of the alley the same way he had entered.

¶ 7    Several people, including Martinez, found Galindo Argumedo a few minutes after he had collapsed. Galindo Argumedo was still breathing, and they called 911. Galindo Argumedo later died of a

2

gunshot wound to his stomach.  While there were no eyewitnesses to the shooting, two witnesses testified to hearing a gunshot or a similar noise at the time of the shooting.  One of the witnesses who was staying at the motel nearby testified that he saw an individual wearing a yellow hoodie with a stripe down the center "zigzag[ging]" through the parked cars in the parking lot.

¶ 8    After a five-day trial, the jury found Albayero guilty of first degree murder.  The court sentenced him to life in prison without the possibility of parole.

## II.    Discussion

¶ 9    Albayero contends that his conviction for first degree murder must be vacated because there was insufficient evidence presented at trial to support the guilty verdict.  He also contends that, if his conviction isn't vacated, it must be reversed because the district court (1) denied him his right to a fair trial before an impartial jury by failing to conduct an adequate inquiry into a juror's complaint of intimidation by individuals associated with the defendant; (2) compounded that error by refusing to excuse the juror, declare a mistrial, or grant his motion for a new trial; and (3) violated his due process rights by allowing the trial to continue in his absence

3

without ensuring that his decision to absent himself was knowing, intelligent, and voluntary. We address, and reject, these contentions in turn.

## A. Sufficiency of the Evidence

¶ 10    Albayero first contends that the evidence presented at trial is insufficient to support the jury's verdict finding him guilty of first degree murder. Specifically, he argues that "there was simply no evidence conclusively establishing that [he] was the shooter." We address this contention first because, if Albayero is right, we must vacate his conviction, and he can't be retried. *See People v. McCoy*, 2015 COA 76M, ¶ 29 (citing *Burks v. United States*, 437 U.S. 1, 18 (1978)), *aff'd on other grounds*, 2019 CO 44.

### 1. Standard of Review

¶ 11    We review a challenge to the sufficiency of the evidence de novo. *People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009). Reviewing the direct and circumstantial evidence as a whole, and in light most favorable to the prosecution, we must determine whether the evidence is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime beyond a reasonable doubt. *Id.* This requires us to give the

prosecution the benefit of all reasonable inferences that might fairly be drawn from the evidence. *Id.* These inferences must be supported by a "logical and convincing connection between the facts established and the conclusion inferred." *People v. Donald*, 2020 CO 24, ¶ 19 (quoting *People v. Perez*, 2016 CO 12, ¶ 25).

¶ 12     "[W]hen only circumstantial evidence is presented, to sustain a conviction, the evidence need not exclude every reasonable hypothesis other than guilt." *Id.* at ¶ 24 (citing *Holland v. United States*, 348 U.S. 121, 139-40 (1954)). Rather, when considering circumstantial evidence, "the jury must use its experience with people and events to weigh the possibilities," *id.*, and "[i]f the jury is convinced beyond a reasonable doubt, [the court] can require no more," *id.* (quoting *Holland*, 348 U.S. at 140).

## 2.    Analysis

¶ 13     Giving the prosecution the benefit of all reasonable inferences that may fairly be drawn from the evidence, *see Phillips*, 219 P.3d at 800, we conclude that sufficient evidence supports the jury's finding that Albayero was the shooter.

¶ 14     Albayero concedes that he and Galindo Argumedo had a dispute that evening, left the club at the same time, and were in

5

general proximity to each other at the time of the shooting. But he points to the lack of direct or physical evidence linking him to the murder — namely, no eyewitnesses, no video, and no murder weapon.

¶ 15 But we conclude that there was overwhelming circumstantial evidence showing that Albayero was the shooter.

¶ 16 Albayero became angry after Galindo Argumedo repeatedly offended his wife. He made several complaints to the club staff regarding this behavior. At one point, Albayero left the club with three other men. When he returned, his hands were in his pockets, and he wasn't frisked by the security guard. Albayero angrily told Martinez, "Now you guys are going to find out who I am," which, given the circumstances and subsequent events, reasonable jurors could interpret as a threat to take action against Galindo Argumedo. When a security guard escorted Galindo Argumedo out of the club, Albayero followed him, and they both entered an alley outside the surveillance cameras' view. That video didn't show anyone else entering or leaving the alley. When Galindo Argumedo reappeared on camera less than a minute later, he collapsed on the road. Meanwhile, Albayero came out of the alley the same way he

had gone in and ran to his car. Two witnesses testified to hearing a gunshot, and one saw a man matching Albayero's description running through the parking lot within seconds of the shooting.

¶ 17　Based on this evidence, the jury could logically have concluded that Albayero was the shooter beyond a reasonable doubt.

### B.　Fair Trial Before an Impartial Jury

¶ 18　Albayero contends that the trial court deprived him of his constitutional right to a fair trial before an impartial jury by failing to conduct an adequate inquiry into a juror's complaint of stalking and intimidation; refusing to excuse the juror; refusing to grant a mistrial based on the incident; and denying his motion for a new trial, also based on the incident, as time barred. We disagree.

¶ 19　At the end of the third day of trial, two women who were present at the trial and believed to be associated with Albayero followed Juror 4 to her car, took pictures of her license plate, and made her "very uncomfortable." This was brought to the court's attention the following morning, and the court called Juror 4 into the courtroom to discuss the incident with counsel, but not the other jurors, present. After Juror 4 described the incident, the

court asked her if she was comfortable continuing her service. She said she was.

¶ 20    After Juror 4 left the courtroom, the following discussion occurred.

> [DEFENSE COUNSEL]: I want to know whether [Juror 4] told other jurors about this. Because I think it could potentially taint the entire jury pool. . . . I guess my concern, Judge, is, quite frankly, you know, I have seen them interact as I walk by. I see them interact and talk with each other. I think it is safe to assume that she might have told other jurors about that. . . . My concern is if we start bringing jurors in to ask that, that plants something in their head. So I guess at this time I do think it is significantly prejudicial to Mr. Albayero. The defense would ask for a mistrial.
>
> THE COURT: A mistrial?
>
> [DEFENSE COUNSEL]: Yes. That would be our first request. If the Court doesn't grant that, then we would ask that we have some way to determine whether other jurors heard about this. I don't know how to do that without planting that in their head.
>
> THE COURT: I completely get that.

¶ 21    After the prosecutor expressed her agreement with defense counsel that there was no "good way to ask the other jurors if they knew about this," the court told the attorneys that he had asked the

8

clerk to ask Juror 4 whether she had told anyone else about the incident, and Juror 4 said she had not. The court said that every morning during the trial he asked the jurors if they needed to bring anything to the court's attention. The prosecutor said that should be enough and asked the court to take Juror 4's word that she could be a fair juror.

¶ 22 The court rejected the idea of excusing Juror 4 because of its concern that doing so would allow the individuals who had contacted Juror 4 to "control[] the method by which the defendant has his trial."

¶ 23 Defense counsel asked the court to reconsider its position but didn't suggest what else the court should do other than excuse Juror 4. Defense counsel at this point focused on Juror 4's purported inability to be objective. The court denied the request.

¶ 24 At the close of the presentation of evidence, the court designated Juror 4 as an alternate, and she didn't participate in deliberations.

### 1. Standard of Review

¶ 25 We review a trial court's decision to keep or excuse a juror following allegations of juror bias for an abuse of discretion. *See*

*People v. Vigil*, 2015 COA 88M, ¶ 7, *aff'd*, 2019 CO 105. We apply this deferential standard because the trial court "is in a unique position to analyze the juror's responses, demeanor, and body language." *Id.* (citing *People v. Young*, 16 P.3d 821, 824 (Colo. 2001)). In this context, a trial court abuses its discretion if there is no evidence in the record to support its decision. *Id.* (citing *People v. Wilson*, 2014 COA 114, ¶ 11).

¶ 26 Similarly, we review a challenge to a district court's denial of a motion for a mistrial and denial of a defendant's motion for a new trial for an abuse of discretion. *People v. Perez*, 2024 COA 94, ¶ 43; *People v. Burke*, 2018 COA 166, ¶ 6. In this context, a trial court abuses its discretion when "its decision is manifestly unreasonable, arbitrary, or unfair, or if it bases its decision on an erroneous view of the law." *Burke*, ¶ 6.

### 2. Analysis

¶ 27 Albayero contends that the court erred in three ways in dealing with this incident. First, he contends that the court failed to perform an adequate inquiry into the incident to determine whether Juror 4 was still fit to serve. Second, he contends that, based on the information before the court, it should have excused

Juror 4 or declared a mistrial. And third, he contends that the court erred by denying his motion for a new trial as untimely. We conclude that the district court performed an adequate inquiry and didn't abuse its discretion by failing to excuse the juror, refusing to grant a mistrial, or denying the motion for a new trial.

### a. The Inquiry

¶ 28 Albayero contends that the court was required to conduct a more thorough hearing — which he calls a "*Remmer* hearing" — into the incident involving Juror 4. *See Remmer v. United States*, 347 U.S. 227 (1954). But *Remmer*, even if applicable to proceedings in state courts (an issue we don't decide), doesn't require any particular procedures for a hearing in these circumstances. *See People v. Robles*, 302 P.3d 269, 281-82 (Colo. App. 2011), *aff'd*, 2013 CO 24. In fact, a court isn't necessarily required to conduct a hearing even after becoming aware of "irregularit[ies] in the jury's proceedings." *People v. Mollaun*, 194 P.3d 411, 416 (Colo. App. 2008) (quoting *United States v. Campbell*, 684 F.2d 141, 151 (D.C. Cir. 1982)); *see also People v. Burnette*, 775 P.2d 583, 586 (Colo. 1989) ("[A] trial court [has] wide discretion in deciding whether a

juror has become unable to continue to serve and therefore must be replaced with an alternate.").

¶ 29    If a court decides to hold a hearing, it should "determine the circumstances of the improper contact and the extent of the prejudice, if any, to the defendant." *Skinner v. State*, 33 P.3d 758, 763 (Wyo. 2001) (quoting *Sisneros v. City of Laramie*, 773 P.2d 933, 936 (Wyo. 1989)) ("[A] mere showing of improper communication is not sufficient; prejudice must also be shown."). A new trial isn't necessary every time "a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

¶ 30    The court adequately questioned Juror 4 about the incident and her ability to continue to serve impartially. Based on her responses and demeanor, the court credited Juror 4's assurance that she was comfortable continuing to serve. Doing so was well within the court's discretion.

¶ 31    Also, contrary to Albayero's speculative assertion, there isn't any evidence that the other jurors knew about the incident. Indeed, Juror 4 said to the clerk that she hadn't told any other juror about

what had occurred (a fact later confirmed by an employee of the public defender's office, as discussed below).  And at no point did defense counsel take issue with Juror 4's statement to the clerk or ask the court to question Juror 4 to determine whether she had discussed the encounter with any other juror.[1]

¶ 32     Thus, we conclude that the court's inquiry was sufficient.

¶ 33     To further ensure that Albayero received his right to a fair trial before an impartial jury, the court ultimately designated Juror 4 as an alternate, and she didn't participate in deliberations.  Given the court's imposition of this cautionary remedy, Juror 4's assurance that she could comfortably continue to serve (which the court credited), and her statement that she hadn't told any other juror about the incident (which the court also credited), we also conclude that the court didn't abuse its discretion by failing to excuse Juror

---

[1] At oral argument, Albayero's counsel suggested that the court should have questioned the other jurors.  But Albayero's opening brief doesn't make that argument; the argument therein is only that the court should have further questioned Juror 4.  Moreover, defense counsel arguably waived any such argument (or at least forfeited it) by suggesting — twice — to the district court that questioning the other jurors could make matters worse.  (On this point, we read the record differently than Albayero's appellate counsel.)  In any event, the court didn't abuse its discretion by failing to question the other jurors.

4 or denying counsel's request for a mistrial. *See People v. Gilbert*, 12 P.3d 331, 334 (Colo. App. 2000) ("If the court is satisfied that the juror will be able to set aside any preconceived notion and render an impartial verdict according to the law and evidence admitted at trial, the juror should not be disqualified.").

### b. Motion for a New Trial

¶ 34    Twenty days after the court sentenced Albayero, his counsel filed a motion for a new trial under Crim. P. 33(c), with affidavits of a defense investigator and a social worker employed by the public defender's office who had spoken to a juror following the verdict. According to the affidavits, that juror said that other jurors were aware that Juror 4 had spoken to the court and were told by the court staff that it was a "safety" or "security" issue. The juror said that some of the other jurors speculated on this information during deliberations, but she wasn't part of those discussions. The motion was predicated on possible juror misconduct and claimed that there was "excusable neglect for the defense's failure" to meet the rule's fourteen-day deadline. The court denied the motion as untimely and rejected the defense's excusable neglect argument.

¶ 35    Crim. P. 33(c) provides that a motion for a new trial based on newly discovered evidence or jury misconduct shall be supported by affidavits and that a motion based on newly discovered evidence shall be filed as soon after the entry of judgment as the facts supporting it become known to the defendant; motions based on other grounds must be filed within fourteen days of the verdict. A juror can testify about "whether extraneous prejudicial information was improperly brought to the jurors' attention," but for a court to set aside a verdict due to juror exposure to extraneous prejudicial material, the moving party must show that extraneous information was improperly before the jury and that the extraneous information "posed the reasonable possibility of prejudice to the defendant." *People v. Holt*, 266 P.3d 442, 444 (Colo. App. 2011) (first quoting CRE 606(b); and then quoting *Kendrick v. Pippin*, 252 P.3d 1052, 1063 (Colo. 2011)); *accord People v. Harlan*, 109 P.3d 616, 624 (Colo. 2005).

¶ 36    We conclude that the district court didn't abuse its discretion by denying Albayero's motion for a new trial for two alternative reasons.

15

¶ 37     First, we tend to agree with the People that the information from the juror wasn't newly discovered evidence within the meaning of the rule. Certainly, defense counsel didn't argue that it was; to the contrary, counsel conceded that the fourteen-day limit applied. And on appeal, Albayero doesn't argue excusable neglect for failing to meet that deadline.

¶ 38     Second, even if the affidavits submitted with the motion presented newly discovered evidence within the meaning of the rule, they didn't establish a basis for a hearing, much less a new trial. *See People v. Thompson*, 2020 COA 117, ¶ 55 n.7 ("We may affirm a district court's judgment on any ground supported by the record, even if the district court did not raise or address that ground."). The juror's alleged statements didn't tie Albayero, or anyone else associated with the defense, in any way to the "safety" or "security" issue of which the juror was only vaguely aware. And according to the social worker, the juror said Juror 4 didn't say anything to the other jurors about the incident. The juror didn't know, or at least didn't say she knew, what any of the other jurors may have speculated about because she wasn't involved in any discussion about the issue. All this is to say that the affidavits didn't present

any evidence that, if true, would show that the jurors knew or thought anything prejudicial to the defense.  Given the absence of such evidence, the district court didn't abuse its discretion.

### C.    Trial Continuing in Albayero's Absence

¶ 39    Albayero contends that his right to be present at trial and associated due process rights were violated when the court allowed the trial to continue in his absence.  Specifically, he argues the court erroneously allowed the trial to proceed without ascertaining the extent to which his decision to absent himself was knowing, voluntary, and intelligent.  Again, we disagree.

¶ 40    On the fourth day of trial, following a break, Albayero refused to return to the courtroom because, according to his attorney, he believed he couldn't receive a fair trial so long as Juror 4 remained seated.  The court granted defense counsel a thirty-minute recess to speak with Albayero, after which Albayero still refused to appear.  At that point, defense counsel moved for a mistrial "based on the totality of the circumstances" — namely, the alleged high risk of prejudice to Albayero resulting from Juror 4's continued presence on the jury.  Although defense counsel agreed with the court that Albayero was the one "creating the issue," she pushed the court to

inquire further into whether Albayero was waiving his right to be present. The court then gave defense counsel and the sheriff one more opportunity to speak with Albayero before ruling on the request for a mistrial. Fifteen minutes later, the parties returned to the courtroom without Albayero, defense counsel said Albayero still refused to return, and the court denied the request for a mistrial.

¶ 41 The court found that Albayero had voluntarily absented himself from proceedings after he was informed of his rights three times. Consequently, the trial would proceed in his absence. Albayero refused to show up for the rest of the trial.

### 1. Standard of Review

¶ 42 We review the district court's decision to continue the trial in Albayero's absence for an abuse of discretion. *See Zoll v. People*, 2018 CO 70, ¶ 15; *People v. Daley*, 2021 COA 85, ¶ 31 ("Even after a defendant waives her right to be present, the court has discretion to proceed with the trial or delay it.").

### 2. Analysis

¶ 43 Albayero contends that the district court didn't safeguard his right to be present by determining that he voluntarily absented himself and continuing the trial without him. In his view, the court

18

didn't make "any concerted effort" to advise him of his rights or consider other options, thereby rendering his waiver of his right to be present invalid. We reject this argument.

¶ 44    "A defendant may waive the right to be present at his criminal trial by his voluntary absence from the trial." *In re Bauer*, 30 P.3d 185, 187 (Colo. 2001). A formal, on-the-record advisement for an in-custody defendant who is waiving his rights is preferred but not required. *People v. Janis*, 2018 CO 89, ¶ 19. Rather, the defendant's waiver of his constitutional right to be present at trial is valid, when, considered as a whole, the circumstances show that the waiver was knowing, intelligent, and voluntary. *Id.* at ¶ 28.

¶ 45    For a waiver to be made knowingly, the defendant must know of the existence of the right and any other relevant information necessary to make an informed decision to exercise or relinquish the right. *Id.* A waiver is made intelligently when the defendant is fully aware and conscious of what he is doing. *Id.* And a waiver is voluntary when the defendant has not been physically or psychologically coerced into waiving the right. *Id.*

¶ 46    Albayero's decision to absent himself from trial, consequently waiving his right to be present, was made knowingly, intelligently,

19

and voluntarily. He acted knowingly because he was present for the first three and a half days of trial, and he knew the court wished him to return. His defense attorney had multiple conversations with him about returning to the trial or returning to the court to be addressed about his right to be present, but Albayero still refused. These actions demonstrate Albayero's knowledge of his right to be present at trial, and his persistent refusal to exercise that right. *See People v. Stephenson*, 165 P.3d 860, 868 (Colo. App. 2007) (determining that a waiver was knowing when the defendant had notice of the consequences of not appearing).

¶ 47     Albayero acted intelligently because the record shows that he was aware that he could be present but didn't want to be for the stated reason that the court had allowed Juror 4 to remain on the jury. In other words, knowing his right, Albayero made a conscious decision based merely on his own unhappiness with the court; there was no relevant information of which he was unaware. *See Janis*, ¶¶ 28, 30.

¶ 48     Albayero also acted voluntarily. There isn't any evidence that he was coerced; his refusal to return was entirely of his own free

will.  *See id.* at ¶ 31; *see also People v. Rodriguez-Morelos*, 2022 COA 107M, ¶ 77, *aff'd*, 2025 CO 2.

¶ 49    Albayero seems to argue that a defendant in continuing physical custody can't voluntarily absent himself from proceedings. He doesn't cite any authority supporting this position.  Requiring district courts to grant a mistrial every time a defendant decides he no longer wants to be present would place a tremendous burden on our courts by providing defendants a means of circumventing and delaying the trial process altogether whenever they want.  *See, e.g., Taylor v. United States*, 414 U.S. 17, 20 (1973) ("It seems equally incredible to us, as it did the Court of Appeals, 'that a defendant who flees from a courtroom in the midst of a trial — where judge, jury, witnesses and lawyers are present and ready to continue — would not know that as a consequence the trial could continue in his absence.'" (quoting *United States v. Taylor*, 478 F.2d 689, 691 (1st Cir. 1973))).  And the fact of custody in no way prevented Albayero from attending the trial; he simply chose not to attend because the district court's ruling upset him.

¶ 50    We conclude that the record supports the district court's finding that Albayero voluntarily absented himself.  Because he did

so knowingly, intelligently, and voluntarily, he waived his right to be present.

### III.  Disposition

¶ 51     The judgment is affirmed.

JUDGE BROWN and JUDGE YUN concur.