22CA2147 Peo v McGhee 06-04-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA2147
City and County of Denver District Court No. 21CR3297
Honorable Jennifer B. Torrington, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jessie James McGhee,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE TOW
Harris and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

---

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Meredith K. Rose, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jessie James McGhee, appeals the judgment of conviction entered on a jury verdict finding him guilty of felony murder and robbery.  We affirm the judgment in part, vacate it in part, and remand with directions.

I.     Background

¶ 2     The jury heard evidence that would support the following findings.

¶ 3     John Jimenez was living at a hotel with his friend, Dustin Stefan.  One evening, Jimenez met McGhee while smoking a cigarette in the hotel's parking lot.  McGhee said his name was James.  After talking for a bit, Jimenez invited McGhee to his hotel room.

¶ 4     In the hotel room, McGhee, Stefan, and Jimenez smoked methamphetamine.  Jimenez testified that they were talking about life and death and, as a result, the energy in the room "was super tense and full of friction and was making [him] nervous."  After going into the bathroom, McGhee came back into the room with a gun and pointed it at Jimenez, who got on the floor underneath the desk.  Jimenez saw Stefan lunge toward McGhee and a fight ensued.  Jimenez heard a gunshot and saw the fight move toward

1

the kitchenette. As the struggle continued, he heard a second gunshot, then a third, and then silence. Jimenez saw McGhee's feet darting around the room, then McGhee approached him and demanded Jimenez's phones and drugs. Jimenez gave McGhee one phone, and McGhee grabbed another phone off the nightstand. McGhee also took methamphetamine and marijuana and left. Jimenez dialed the hotel operator and said he needed police and an ambulance.

¶ 5    Police arrived and found Stefan lying on the floor of the room. Stefan was transported to the hospital where he died from a gunshot wound.

¶ 6    The jury found McGhee guilty of felony murder, aggravated robbery, and robbery. The trial court merged the aggravated robbery conviction into the felony murder conviction and sentenced McGhee to life in the custody of the Department of Corrections for the felony murder conviction concurrent to a twelve-year term for the robbery conviction.

## II.    Sufficiency of the Evidence

¶ 7    McGhee contends that there was insufficient evidence to support his conviction for felony murder because the prosecution

failed to prove that McGhee killed Stefan "in the course of or in furtherance of" the predicate offense of robbery. More specifically, McGhee contends that the evidence fails to establish that he had formed the intent to commit or attempt to commit the robbery either before or at the time of the shooting. We disagree.

### A. Standard of Review and Applicable Law

¶ 8 "We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions." *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). We view the direct and circumstantial evidence as a whole and in the light most favorable to the prosecution to determine whether the evidence was "sufficient to support the conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt." *People v. Griego*, 2018 CO 5, ¶ 24. In doing so, we give the prosecution "the benefit of every reasonable inference which might be fairly drawn from the evidence." *People v. Perez*, 2016 CO 12, ¶ 25 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)).

### B. Analysis

¶ 9 The relevant felony murder statute provides that a

person commits the crime of murder in the first degree if[,] . . . [a]cting either alone or with one or more persons, he or she commits or attempts to commit . . . robbery, . . . and, in the course of or in furtherance of the crime that he or she is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone.

§ 18-3-102(1)(b), C.R.S. 2020.[1]

¶ 10    "Where, as here, there is a close temporal and spatial relationship between a killing and subsequent felony, the defendant's intent to commit the underlying felony may be inferred from the circumstances." *People v. Phillips*, 219 P.3d 798, 800-01 (Colo. App. 2009).  McGhee came out of the bathroom with the gun drawn and pointed it at Jimenez.  According to Jimenez's testimony, after the third gunshot the "room goes completely silent," then, "at that point," Jimenez sees McGhee's feet darting about the room and McGhee approaches Jimenez for phones and drugs.

---

[1] Felony murder was reclassified as second degree murder in 2021. Ch. 58, secs. 1-2, §§ 18-3-102(1)(b), -103(1)(b), 2021 Colo. Sess. Laws 235-36.  That change does not impact McGhee's conviction because the shooting here occurred in May 2021 and the classification change applies only to offenses committed on or after September 15, 2021.  *See* Sec. 6, 2021 Colo. Sess. Laws at 238.

¶ 11    At oral argument, McGhee's counsel conceded that a defendant's actions *after* the killing act may be relevant to what their intent was *before* the killing act, though she asserted that McGhee's acts after the shooting were not sufficient to support an inference of his preshooting intent to commit robbery.  To the contrary, viewing the evidence in the light most favorable to the prosecution and giving them the benefit of all reasonable inferences therefrom, we conclude that the sequence of events supports that McGhee had formed the intent to commit the robbery when he came out of the bathroom.  We therefore reject McGhee's sufficiency challenge.[2]

### III.    Unanimity

¶ 12    McGhee contends that his convictions for robbery and aggravated robbery must be reversed because the evidence, arguments, jury instructions, and verdict forms created an obvious

---

[2] The parties spend a considerable portion of their argument, including discussion of the pertinent law in other states, on whether felony murder requires that a defendant form the intent to commit the predicate felony before committing the homicidal act. In light of our conclusion that the evidence supports an inference that McGhee had formed the intent to rob Jimenez before he shot Stefan, we need not consider this issue.

risk of nonunanimous jury verdicts, specifically with respect to who the victim was for the robbery and aggravated robbery convictions. We disagree.

## A.     Additional Background

¶ 13     The complaint charged McGhee with robbery, naming Jimenez as the victim.  The complaint also charged McGhee with aggravated robbery, naming Jimenez and Stefan as the victims and stating that McGhee "knowingly wounded or struck [Jimenez] and/or [Stefan] with a deadly weapon," a handgun.  The trial court read these charges to the venire during voir dire, identifying who the victim(s) were for each respective count.  During opening statement, the prosecution did not identify who the victim(s) of robbery and aggravated robbery were.  During closing statement, the prosecution argued that McGhee "took Jimenez's phones."  Neither the jury instructions nor the verdict forms named the victim(s) for robbery or aggravated robbery.  Rather, the jury instructions allowed the jury to convict McGhee of robbery and aggravated robbery if it found, among other things, that he had taken something of value "from the person or presence *of another*."

(Emphasis added.) The standard unanimity instruction was given. *See* COLJI-Crim. E:23 (2025).

### B. Standard of Review and Applicable Law

¶ 14 We review de novo whether a defendant's right to a unanimous verdict is violated due to the risk that the jury was divided as to the identity of the victim. *See People v. Smith*, 2018 CO 33, ¶ 26. In asking whether the jury's verdict was unanimous, we must ask if it is impossible to determine whether the jury unanimously agreed as to a particular victim. *See People v. Simmons*, 973 P.2d 627, 630 (Colo. App. 1998).

¶ 15 Defense counsel did not raise this issue at trial, so we will reverse only for plain error, meaning that the error was obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14. An error is obvious if it "contravene[d] a clear statutory command, a well-settled legal principle, or established Colorado case law." *People v. Crabtree*, 2024 CO 40M, ¶ 42. An error is "substantial" if it "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Garcia v. People*, 2019 CO 64, ¶ 3 (quoting *Hagos*, ¶ 18). An error in jury instructions "generally does not rise to the level of plain

7

error unless a review of the entire record establishes a reasonable possibility that the improper instruction contributed to the defendant's conviction." *Smith*, ¶ 25.

¶ 16 McGhee was charged with aggravated robbery under section 18-4-302(1)(b), C.R.S. 2025. To prove a violation of this statutory provision, the prosecution had to show that McGhee committed robbery by knowingly taking anything of value from the presence of another by the use of force, threats, or intimidation. *Id.*; *see* § 18-4-301, C.R.S. 2025 (robbery). And, as the jury was instructed, the prosecution had to prove that, during the robbery or the immediate flight therefrom, McGhee knowingly wounded or stuck *any person* with a deadly weapon. *See* § 18-4-302(1)(b). Notably, the person wounded does not have to be the same as the person robbed.

## C. Analysis

¶ 17 Our review of the record — including the evidence, the arguments, the statements of the trial judge, and the jury instructions — does not reveal an obvious risk that the jury would have understood that anyone other than Jimenez was the victim of robbery and aggravated robbery. *See Smith*, ¶ 26.

¶ 18    As to the aggravated robbery, the prosecution established that McGhee pointed his gun at Jimenez and then took Jimenez's phones, one directly from Jimenez's person and one from the nightstand.  The prosecution also established that during the act of this robbery, McGhee shot and killed Stefan.

¶ 19    McGhee argues that the jury may have found that the phones were taken from either Jimenez's or Stefan's presence.  In particular, he argues that the jury could have found that McGhee took the phones from Stefan's presence because they were within Stefan's "reach, inspection[,] or observation" and he could have retained control over them but for McGhee's use of force.[3]  *People v. Borghesi*, 66 P.3d 93, 103 (Colo. 2003) (The term "presence of another" has been construed in case law "to mean that the property taken must be within the victim's reach, inspection or observation so that the victim would be able to retain control over the property

---

[3] To the extent McGhee contends for the first time in his reply brief that he also took the drugs from Stefan's presence, we do not address this argument.  *See People v. Boles*, 280 P.3d 55, 61 n.4 (Colo. App. 2011) (declining to address an argument raised for the first time in a reply brief).

but for the force or threat of force" by the defendant against the victim.). But this argument lacks both factual and legal support.

¶ 20 First, the jury heard no evidence that the phones were within Stefan's reach. And the prosecutor never suggested that this was the basis for the robbery charge.

¶ 21 Second, the jury would have had to come up with this legal theory on its own. The jury was not instructed on *Borghesi*'s explanation of what "presence of another" meant (nor did McGhee request that the court give such an instruction). And neither the prosecution nor defense counsel ever argued this theory to the jury. Indeed, the defense never disputed that if phones were taken, they would have been taken only from Jimenez; rather, McGhee's theory was that he had not taken any phones.

¶ 22 Nor was there any evidence that Jimenez was wounded or struck with a deadly weapon. Indeed, McGhee's reliance on Jimenez's testimony that he felt a gunshot breeze is misplaced because that does not equate to being wounded or struck — and no one suggested to the jury that it did. And the prosecutor explained, "The rest of aggravated robbery requires he knowingly wounded or struck a person with a deadly weapon. It doesn't have to be John

Jimenez. Shooting Dustin Stefan is sufficient for aggravated robbery." Thus, no reasonable juror could have been confused as to which person was robbed (Jimenez) and which person was wounded (Stefan).[4]

¶ 23    For the same reasons, we conclude that no reasonable juror could have been confused as to who the victim of the robbery was (Jimenez). Further, the trial court named Jimenez as the only victim when it read that charge to the venire. *See Smith*, ¶ 27.

¶ 24    McGhee's reliance on *Simmons* is unavailing. There, the menacing charge identified one individual as the victim, but the prosecutor argued during closing that the jury could find the defendant guilty if he menaced that person or a different person. *Simmons*, 973 P.2d at 630. But as noted, the prosecutor here did not argue that Stefan was the victim of either the robbery or aggravated robbery. *See Smith*, ¶ 34 (distinguishing *Simmons* on the same basis).

---

[4] We do not address McGhee's undeveloped argument that because the complaint named both Jimenez and Stefan as victims of aggravated robbery, the jury should have been required to find the elements satisfied as to both men. *See People v. Stone*, 2021 COA 104, ¶ 52 (appellate courts do not address undeveloped arguments).

¶ 25    Finally, the trial court's instruction in this case that "the verdict for each charge must represent the considered judgment of each juror, and it must be unanimous" could be read to have required unanimous agreement as to who the victim of the robbery was and who the victim of the aggravated robbery was.  *Cf. People v. Wester-Gravelle*, 2020 CO 64, ¶ 38 (holding that the district court did not plainly err by not sua sponte giving a modified unanimity instruction where it instructed the jury that any verdict had to be unanimous as to "all parts of it").  With no evidence to the contrary, we assume the jury heeded this instruction.  *People v. Villa*, 240 P.3d 343, 352 (Colo. App. 2009).

¶ 26    Thus, we discern no reversible error.

## IV.    Chain of Custody

¶ 27    McGhee next contends that the trial court erred by admitting DNA evidence because the chain of custody for the samples taken from the scene was broken twice.  We discern no reversible error.

### A.    Additional Background

¶ 28    Various items of evidence were collected from the hotel room, including a live round, eyeglasses, and six swabs of blood from various locations in the room.  Officer Jared Lippert collected the

12

live round and then turned it over to the homicide unit.  Kylie Verderosa and Ross McColm, criminologists with the Denver Police Department Crime Laboratory (Denver Crime Lab), collected the eyeglasses and the six blood swabs, which were marked with police markers.

¶ 29     Kristin Denning, an analyst for the Denver Crime Lab, tested the swabs for blood and put each of the samples that tested positive for blood into test tubes.  She also tested the items collected for blood and cellular material and put those samples into test tubes.  For example, she identified material on the eyeglasses that appeared to be blood; collected a sample of that material; tested it for blood, which was positive; and then placed that blood sample into a test tube.  She also sampled a portion of the eyeglasses that did not appear to be covered in blood for cellular material, which tested positive for cellular material and blood, and put that sample in another test tube.  All the test tubes with the blood and cellular material samples were placed into a secure box in a freezer for subsequent DNA analysis, which consisted of developing the DNA profile for each sample.

¶ 30    At trial, Denning's forensic scientist colleague, Lauren Fletcher, testified about Denning's process and results because Denning had retired.  Fletcher also explained that a saliva sample was collected from McGhee and that the cotton was cut off the swab and placed into a labeled test tube, which was sent for DNA analysis.

¶ 31    Andrew Carmel, a forensic scientist with the Denver Crime Lab, testified that he can develop DNA profiles from samples of biological material, including blood and cellular material samples. He testified that he developed a DNA profile from McGhee's saliva sample and that it matched the DNA profiles he developed from the items and swabs collected from the scene.

### B.    Applicable Law and Standard of Review

¶ 32    Authentication is a condition precedent to the admissibility of evidence.  CRE 901(a).  The condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.*

¶ 33    Though CRE 901 relates to the admission of evidence, the same standard applies "if a proper identification of an object is required for other purposes, even if the object itself is not offered"

14

as evidence. *People v. Valencia*, 257 P.3d 1203, 1206 (Colo. App. 2011). For example, before an expert can testify about the results of the testing or analysis of an object, "[t]he object must be identified" — that is, "some proof must be presented of a connection between the object tested and the defendant, the victim, or the crime." *Id.* The rationale for the rule is that the expert's testimony is irrelevant unless the object is what its proponent alleges. *Id.*; *see also People v. Rodriguez*, 2022 COA 11, ¶ 15 (unless the prosecution could establish that the substance tested was the same substance recovered from the defendant, the chemist's testimony that the tested substance was cocaine would be irrelevant).

¶ 34 "[W]hen the evidence, as here, is not readily identifiable and is susceptible to alteration by tampering or contamination, the proponent of the evidence must authenticate it by establishing a chain of custody for the item." *Rodriguez*, ¶ 21; *People v. Sutherland*, 683 P.2d 1192, 1197 (Colo. 1984) ("The chain of custody of any blood sample must be established, and failure to do so may be excused only where circumstances provide reasonable assurances of identity and unchanged condition of the sample."). The chain of custody method for authentication "requires that the

proponent of real evidence establish that the evidence was involved in the incident and that the condition of the evidence at trial is substantially unchanged." *Rodriguez*, ¶ 23 (quoting *People v. Mascarenas*, 666 P.2d 101, 112 (Colo. 1983)). "To do so, the proponent must introduce evidence showing where the item has been from its initial seizure until it is offered at trial." *Id.*

¶ 35 We review a trial court's evidentiary rulings for an abuse of discretion. *Id.* at ¶ 11. A trial court abuses its discretion if its ruling misconstrues or misapplies the law or is manifestly arbitrary, unreasonable, or unfair. *Id.*

## C. Analysis

¶ 36 McGhee contends that the chain of custody for the scene samples was first broken when Fletcher testified as to what Denning did with the samples because the testimony was hearsay. He contends that the chain of custody was broken again when Carmel failed to testify about receiving the test tubes that contained the blood and cellular material samples from the swabs and items collected from the scene.

¶ 37 Because McGhee did not object to Fletcher's or Carmel's testimony based on lack of chain of custody, we will reverse only for

plain error. Even assuming, without deciding, that there was a break in the chain of custody with respect to the scene samples, we discern no plain error because any error would not have been obvious to the trial court at the time the evidence was admitted. *See Crabtree*, ¶ 42 ("[T]he plainness prong demands that the error be 'so clear-cut, so obvious,' a trial judge should be able to avoid it without benefit of objection." (quoting *Romero v. People*, 2017 CO 37, ¶ 6)).

¶ 38    At the time Fletcher and Carmel testified, the trial court had heard the parties' opening statements. McGhee's trial counsel had told the jury that the prosecution would be "relying on *the fact that* Mr. McGhee's DNA is found in the room. His blood is found splattered in different parts of the hotel room." Counsel then said, "Mr. McGhee does not deny that he was in the room that night."

¶ 39    Of course, we do not suggest that these comments amounted to either a stipulation to the admission of the DNA evidence or a waiver of the ability to later challenge its admission. Trial attorneys often make comments during opening statement based on what they anticipate the evidence will be and then find themselves having to pivot during trial when the evidence does not get presented as

expected.  But, especially when a defense counsel does not pivot during the trial, the parties' opening statements inform the trial judge's perspective of what the issues in the case are likely to be. Indeed, a trial judge is generally not privy to all the discovery in a case and does not know the defense strategy until it plays out at trial.  The judge cannot know whether, or why, a party will insist on all the evidentiary foundational steps being taken — or whether there is a specific reason a party does not do so.

¶ 40     In other words, the trial judge has no way of knowing whether a party that could, but chooses not to, assert an evidentiary objection to the admission of evidence is not doing so because of oversight or because there is some strategic reason for refraining from doing so: perhaps they want to avoid calling the prosecutor's attention to a foundational deficiency to prevent the prosecutor from rectifying it and to permit defense counsel to exploit the deficiency during closing argument; or perhaps they want the evidence admitted for their own purposes, which the trial judge cannot anticipate because they lack a full awareness of the anticipated evidence and strategy.  And if the trial judge guesses wrong — intervening in a way that unwittingly interferes with the

18

nonobjecting party's strategy — they could unfairly damage the defense's case and give the jury (and the public) the impression that the trial judge is not impartial but is, instead, allied with one of the parties.

¶ 41 With this backdrop, we cannot say under these circumstances that it was obvious to the trial court that Fletcher and Carmel should not have been permitted to testify about McGhee's DNA. Defense counsel had not to that point pivoted away from the strategy of conceding McGhee's presence in the hotel room. (Indeed, we note that even during closing argument, defense counsel stated, "This case is not about Mr. McGhee being in the room at some point that night, a fact that we haven't disputed.")

¶ 42 Further, the defense's theory was that McGhee did not commit robbery or aggravated robbery and thus did not commit felony murder. This theory did not require challenging the DNA evidence. *Cf. People v. Miller*, 113 P.3d 743, 751 (Colo. 2005) (instructional error did not rise to level of plain error where subject of error was not contested at trial); *People v. Dunlap*, 124 P.3d 780, 794 (Colo. App. 2004) (same) (collecting cases).

¶ 43    Because nothing about the challenged testimony made the

trial court's need to raise the issue "so clear-cut, so obvious" that it

did not need to wait for an objection, *Crabtree*, ¶ 42 (quoting

*Romero*, ¶ 6), there was no obvious error and, thus, no plain error

requiring reversal.

V.    Merger

¶ 44    McGhee contends that the robbery conviction must merge into

the aggravated robbery conviction.  We agree.

¶ 45    We review de novo whether merger applies to criminal

offenses.  *People v. Torres*, 224 P.3d 268, 275 (Colo. App. 2009).

¶ 46    We have concluded that the robbery and aggravated robbery

convictions involved a single victim (Jimenez).  *See supra* Part III.C.

The robbery also involved one location and one event, and McGhee's

conduct was continuous and did not entail multiple, factually

distinct events, nor did the People present them as legally

separable.  *See People v. Wagner*, 2018 COA 68, ¶ 13 ("In

determining whether offenses are factually distinct, we consider

factors including the time and location of the events, the

defendant's intent, and whether the People presented the acts as

legally separable.").  Thus, because the counts of robbery and

aggravated robbery established a single offense, the trial court should have merged the robbery conviction into the aggravated robbery conviction. *See People v. Serna-Lopez*, 2023 COA 21, ¶¶ 21-22 (merging two counts of aggravated robbery where the robbery involved one victim, one location, and one event).

¶ 47    The People contend that the robbery conviction need not merge into the felony murder conviction because the crimes had different victims. They argue that "the trial court determined it was the aggravated robbery conviction that needed to be merged. But where the victims of the respective offenses are not the same, additional merger of the robbery conviction is not required." Further, the People contend, quoting *People v. Bartowsheski*, 661 P.2d 235, 247 (Colo. 1983), that the trial court is required to "give as much effect to the jury's resolution of the issues submitted to it as can be done without running afoul of the defendant's constitutional and statutory rights."

¶ 48    Essentially, the People appear to suggest that the trial court should not have merged the aggravated robbery conviction into the felony murder conviction (because the crimes had different victims), and thus, we should not require the robbery conviction to be

similarly merged. But this argument misses the point. We do not conclude that the robbery conviction must merge into the felony murder conviction. We conclude only that the robbery conviction should have been merged into the aggravated robbery conviction.

¶ 49    And to the extent the People suggest that the trial court erred by merging the aggravated robbery conviction into the felony murder conviction, that issue is not before us because the People did not file a cross-appeal. *See People v. Pimble*, 2015 COA 112, ¶ 14. Moreover, we are aware of no authority (and the People cite none) suggesting that we can ignore an erroneous sentencing decision as a means of offsetting the effect of a different error that we cannot address because it is not properly before us. We thus will not disturb the merger of the aggravated robbery conviction into the felony murder conviction.

¶ 50    Accordingly, we remand with instructions to amend the mittimus to reflect that the robbery conviction merges into the aggravated robbery conviction, which then merges into the felony murder conviction.

## VI.   Disposition

¶ 51     McGhee's robbery conviction merges into his aggravated robbery conviction, which then merges into the felony murder conviction.  We therefore vacate the robbery conviction and sentence and remand for correction of the mittimus.  The judgment is otherwise affirmed.

JUDGE HARRIS and JUDGE BROWN concur.